BENJAMIN D. HARRIS, PLAINTIFF IN ERROR, v. WILLIAM HARDE-MAN, HENRY R. W. HILL, COTESWORTH P. SMITH, AND HENRY A. MOORE.

A statute of Mississippi directs that where the defendant cannot be found, a writ of capias ad respondendum shall be served, by leaving a copy thereof with the wife of the defendant, or some free white person above the age of sixteen years, then and there being one of the family of the defendant, and found at his usual place of abode, or leaving a copy thereof at some public place, at the dwelling-house or other known place of residence of such defendant, he being from home, and no such free white person being found there willing to receive the same.

The Circuit Court of the United States adopted a rule that the capias should be served personally; or, if the defendant be not found, by leaving a copy thereof at his or her residence, or usual place of abode, at least twenty days before the return day thereof.

The marshal made the following return to a writ of capias: "Executed on the defendant Hardeman, by leaving a true copy at his residence."

This service was neither in conformity with the statute nor the rule.

Therefore, when the court gave judgment, by default, against Hardeman, and an execution was issued, upon which a forthcoming bond was given, and another execution issued, and at a subsequent day the court quashed the proceedings, and set aside the judgment by default, this order was correct.

When the judgment by default was given, the court was not in a condition to exercise jurisdiction over the defendant, because there was no regular service of process, actual or constructive.

The cases upon this point, examined.

Moreover, when the proceedings were quashed, they were still in fieri, and not terminated; and any irregularity could be corrected, on motion.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the Southern District of Mississippi.

The facts are stated in the opinion of the court.

It was argued by Mr. Nelson for the plaintiff in error, and Mr. Freeman for the defendant.

Mr. Nelson contended that the judgment of the court below was erroneous; and referred to the following authorities.

To show that the bond was regularly taken under the Mississippi statute. Hutch. Code, 910, Art. 6, sec. 2; Howard & Hutch. 653, sec. 73.

The ground of the motion made by the defendants in error, in the court below, was, that the original judgment was void for

want of notice; and that being void, the process issued upon it and the bond taken under that process, were nullities.

It may be true that the return of the service of notice was insufficient.   Smith v. Cohen, 3 Howard, (Miss.) 35; Tomlinson v. Hoyt, 1 Smedes & Marsh. 515; Eskridge v. Jones, Id. 595.

But that was matter to be considered and passed upon by the court rendering the judgment.   Fatheree v. Long, 5 Howard, (Miss.) 661; Smith v. Bradley, 6 Smedes & Marsh. 492.

Besides, the defendants were estopped, by the execution of the bond, from denying the validity of the judgment and the execution.   Bank U. S. v. Patton, 5 Howard, (Miss.) 200; Miller v. Patten, 3 Smedes & Marsh. 463; Keringham v. Scanland, 6 Howard, (Miss.) 540; Field v. Morse, 1 Smedes & Marsh. 347; Conn v. Pender, 2 Smedes & Marsh. 386; Pender v. Felton, 2 Id. 535; Clowe v. Tharpe, 3 Id. 64; McCoul v. Ellet, 8 Id. 505.

The bond was regularly forfeited.   Barker v. The Planters Bank, 5 Howard, (Miss.) 566; Puckett v. Graves, 6 Smedes & Marsh. 384; Talbert v. Melton, 9 Id. 9; Dowd v. Hunt, 10 Id. 414.

And the forfeiture of the bond extinguished the original judgment.   Davis v. Dixon, 1 Howard, (Miss.) 64; Weathersby v. Proby, Id. 98; Witherspoon v. Spring, 3 Id. 60; Binny v. Stanton, 2 Smedes & Marsh. 457.

Moreover, the return was in conformity with the rule of court.

To show the validity of said rule, the plaintiff in error relied upon the act of Congress of the 24th September, 1789, sec. 34, (Laws U. S. vol. 1, 93); Act of 2d March, 1793, sec. 7, (Laws U. S. vol. 1, 335); Act of 19th May, (Laws U. S. vol. 4, 279); Wayman v. Southard, 10 Wheaton, 1; Beers v. Haughton, 9 Peters, 330, 360, 361; Fullerton v. Bank U. S. 1 Peters, Sup. Ct. Rep. 612; Williams v. Bank U. S. 2 Id. 96; Amiss v. Smith, 16 Peters, 303.

*Mr. Freeman*, for defendant in error.

In this case, a motion was made in the court below, to quash the forthcoming bond, and vacate the original judgment.   It was sustained upon the ground of the judgment being a nullity, there having been no service of process upon Hardeman, and no appearance entered for him.

It will be conceded, that if there be no notice, actual or constructive, the judgment is a nullity.   4 Peters's Rep. 474; 2 Yerger's Rep. 484; 11 Wendell's Rep. 652; 15 Johnson's Rep. 141; 1 Smedes & Marshall's (Miss.) Rep. 351.   There was no " actual service " of process on Hardeman, as is shown by the marshal's return.   Did he have constructive notice? The statute

of Mississippi provides, when the defendant is not found, that constructive service may be made, and points out the mode. Howard & Hutchinson's Dig. 583, sec. 27. The statute was not complied with in executing the writ in this case. It was served by leaving a copy at defendant's residence. And is not even dated. In construing this statute, the court of last resort in Mississippi, have several times held such service to be bad. As, for example, in the case of Smith v. Cohea, (3 Howard's Miss. Rep. 35,) it is held that a return on a writ "executed by leaving a copy at the boarding-house of the defendant," is insufficient. So, also, in the case of Fatheree v. Long, (5 Howard's Miss. Rep. 661,) it is held that the return " executed by leaving a copy at the defendant's house," is bad. And the court goes on to say, that when the service is not personal, the return must show that the requirements of the statute were complied with. A similar exposition of the statute was given in the cases of Tomlinson v. Hoyt, and Eskridge v. Jones, 1 Smedes & Marshall's Rep. 515 and 595.

Had this motion been made at the term next succeeding that at which the judgment was rendered, no one would doubt Hardeman's right to the relief sought by it. Does the giving and forfeiture of the forthcoming bond, and the lapse of time, bar his right?

It is believed that if the giving and forfeiture of the forthcoming bond does not bar, the mere lapse of time cannot. For there is no time limited by the statute within which such a motion may be made. That the giving and forfeiture of the forthcoming bond interpose no obstacle to the motion, is clear. It is true, the court of last resort in Mississippi, has frequently decided that a motion to quash a forthcoming bond, must be made at the term to which it is returnable. 6 Howard's Miss. Rep. 540; 1 Smedes & Marshall's Rep. 347; Id. 386. Yet the same court has held that when the judgment is absolutely void for want of jurisdiction in the court rendering it, either of the subject-matter, or over the parties, the forthcoming bond is absolutely void also, and subject to be quashed, on motion, at any time, either at, or subsequent to the return term. Buckingham v. Bailey, 4 Smedes & Marshall's Rep. 538.

A stronger reason may be added in this court. Here the forthcoming bond is treated and considered as part of the process of the court. 16 Peters's Rep. 312, 313. In this case, that process is founded upon a judgment confessedly void. The court can always control its own process; and will never permit void writs to be issued and executed, when brought to its attention. And it can make no difference whether the effort to resist

the issuance and execution of such process is made within one, or after a lapse of ten years, from the date of the void judgment.

A rule of court, adopted by the District Judge, (Judge Adams,) is relied on to show that the execution of the process upon Hardeman, was sufficient. Upon this, I remark:

1. That even if the rule be valid, the service is not good, for it has no date; and it does not appear, therefore, that it was executed "fifteen days" before court, so as to give jurisdiction of the person.

2. The District Judge has no power to adopt such a rule. 16 Peters's Rep. 314. The decision of the Circuit Court should therefore be affirmed.

Mr. Justice DANIEL delivered the opinion of the court.

The defendants in error moved the Circuit Court to quash a forthcoming bond, executed by the defendants to the plaintiff; and to set aside the judgment on which the bond was founded, upon the grounds that the forthcoming bond was taken in execution of a judgment entered against the defendant Hardeman, as by default, when in truth there had been no service of original or mesne process upon him to warrant such a judgment. The facts and proceedings in this case, as disclosed by the record, are as follow: The plaintiff in error, in March, 1839, instituted in the Circuit Court an action on a promissory note against the defendant and three others; and upon the writ sued out in that action, the marshal, on the 9th of April, made a return in these words: "Executed on the defendant Hardeman, by leaving a true copy at his residence." Upon this return of the officer, at the next succeeding or return term of the court, in May, 1839, a judgment by default for want of appearance, was taken against the defendant Hardeman for the amount of the note, with interest and costs. Amongst other proceedings upon this judgment, a writ of *fieri facias* was sued out in March, 1840, was levied on sundry slaves, the property of Hardeman, and the forthcoming bond in question executed by him on the 20th of April, 1840. In pursuance of this forthcoming bond another *fieri facias* was sued out on the 11th of June, 1840, and upon this last writ was indorsed on the 8th of October, 1840, a *cessat executio* by the plaintiff's attorney.

By the statute of Mississippi regulating proceedings in courts of law, the following modes for the service of process in certain cases, are prescribed: "All writs of *scire facias* and *capias ad respondendum*, where no bail is required, may be served in the following manner: Where the defendant cannot be found, it shall be deemed sufficient service of such writ for the sheriff or

other officer to whom the same is directed, to leave a copy thereof with the wife of the defendant or some free white person above the age of sixteen years, then and there being one of the family of the defendant, and found at his usual place of abode, or to leave a copy thereof at some public place at the dwelling-house, or other known place of residence of such defendant, he being from home, and no such free white person being found there willing to receive the same."

On the 18th of June, 1838, the District Judge for the Southern District of Mississippi, in the absence of the circuit or presiding Judge, caused to be entered on the minutes of the Circuit Court, as a rule of proceeding in that court, an order in the following words, viz., " The *capias ad respondendum* shall be served by arresting the defendant, unless bail be waived ; or where bail be waived, or a summons shall issue, the same shall be served personally, or if the defendant be not found, by leaving a copy thereof at his or her residence, or usual place of abode, at least twenty days before the return day thereof, to entitle the plaintiff to á trial or judgment by default at the return term."

The action in this case was commenced by a summons, and the marshal's return of the service of that process, and the judgment thereupon by default at the return term, and the subsequent proceedings upon that judgment, were as have been already stated.

Upon the application of the defendant Hardeman, at the May term of the Circuit Court, in the year 1850, until which time the proceedings in this case had been stayed, the court quashed the forthcoming bond and *fieri facias* sued out thereon, and set aside the judgment purporting to be a judgment by default against the defendant, as being unwarranted upon the face of the proceedings, and therefore void.

In reviewing the decision of the Circuit Court, it should be borne in mind, as a rule to guide and control our examination, that the judgment impugned before that court was a judgment by default, and that in all judgments by default, whatever may affect their competency or regularity, every proceeding indeed, from the writ and indorsements thereon, down to the judgment itself, inclusive, is part of the record, and is open to examination. That such cases differ essentially, in this respect, from those in which there is an appearance and a *contestatio litis*, in which the parties have elected the grounds on which they choose to place the controversy, expressly or impliedly waiving all others. In support of the rule just stated, many authorities might be adduced ; we cite for it the cases of Nadenbush v. Lane, 4 Ran. 413, and of Wainwright v. Harper, 3 Leigh, 270.

Within the scope of this rule, two inquiries present themselves

in connection with the decision of the Circuit Court. The first is this, whether the court in which the judgment by default was taken, ever had jurisdiction as to the defendant, so as to warrant the judgment entered against him by default. And the second inquiry is, whether, upon the hypothesis that the court had not jurisdiction of the person of the defendant, and that the judgment against him was not binding, it was competent for the Circuit Court, in the mode adopted by it, to set aside the judgment, and to quash the proceedings consequent thereupon.

In reference to the first inquiry, it would seem to be a legal truism, too palpable to be elucidated by argument, that no person can be bound by a judgment, or any proceeding conducive thereto, to which he never was party or privy; that no person can be in default with respect to that which it never was incumbent upon him to fulfil. The court entering such judgment by default could have no jurisdiction over the person as to render such personal judgment, unless, by summons or other process, the person was legally before it. A court may be authorized to exert its powers in reference either to persons or things — may have jurisdiction either *in personam,* or *in rem,* and the existence of that jurisdiction, as well as the modes of its exercise, may vary materially in reference to the subject-matter to which it attaches. Nay, they may be wholly inconsistent; or at any rate, so much so, as not to be blended or confounded. This distinction has been recognized in a variety of decisions, in which it has been settled, that a judgment depending upon proceedings *in personam* can have no force as to one on whom there has been no service of process, actual or constructive; who has had no day in court, and no notice of any proceeding against him. That with respect to such a person, such a judgment is absolutely void; he is no party to it, and can no more be regarded as a party than can any and every other member of the community. As amply sustaining these conclusions of law, as well as of reason and common sense, we refer to the following decisions. In Borden *v.* Fitch, (15 Johnson's Rep. 141,) Thompson, Chief Justice, says: "To give any binding effect to a judgment, it is essential that the court should have jurisdiction of the person and the subject-matter; and the want of jurisdiction is a matter that may always be set up against a judgment when sought to be enforced, or where any benefit is claimed under it. The want of jurisdiction makes it utterly void and unavailable for any purpose. The cases in the English courts, and in those of our sister States, are very strong to show that judicial proceedings against a person not served with process to appear, and not being within the jurisdiction of the court, and not appearing in

person or by attorney, are null and void. In Buchanan v. Rucker, (9 East, 192,) the Court of King's Bench declared that the law would not raise an assumpsit upon a judgment obtained in the Island of Tobago by default, when it appeared upon the face of the proceedings that the defendant was not in the island when the suit was commenced, and that he had been summoned by nailing a copy of the declaration on the court-house door. The court said it would have made no difference in the case if the proceedings had been admitted to be valid in the Island of Tobago. In the Supreme Court of Massachusetts, Chief Justice Parsons, in Bissell v. Briggs, 9 Mass. Rep. 464, lays down the principle very clearly and distinctly, that before the adoption of the Constitution of the United States, and in reference to foreign judgments, it was competent to show that the court had no jurisdiction of the cause; and if so, the judgment, if set up as a justification for any act, would be rejected without inquiring into its merits.' After citing a number of cases, the learned Judge proceeds to say: " We have refused to sustain an action here upon a judgment in another State, where the suit was commenced by attachment, and no personal summons or actual notice given to the defendant, he not being at the time of the attachment, within the State. In such cases, we have considered the proceedings as in rem, and only binding the goods attached, and the judgment having no force in personam. This principle is not considered as growing out of any thing peculiar to proceedings by attachment, but is founded on more enlarged and general principles." It is said by the court, " that to bind a defendant personally by a judgment, when he was never personally summoned, nor had notice of the proceedings, would be contrary to the first principles of justice."

It is worthy of notice, in this place, that the cases from 9 East, and 9 Massachusetts Reports, cited by Chief Justice Thompson, were not instances in which the validity of those judgments was examined upon appeal or writ of error, but were instances in which that validity was inquired into collaterally, before other tribunals in which they were adduced as evidence to sustain other issues there pending.

In the case of Starbuck v. Murray, 5 Wendell, 156, the Supreme Court of New York say: " The courts of Connecticut, Pennsylvania, New Hampshire, New Jersey, and Kentucky, have also decided, that the jurisdiction of the court rendering a judgment, may be inquired into, when a suit is brought in the courts of another State, on that judgment;" and, after citing the cases of Thurber v. Blackburne, (1 New Hampshire Reports, 246); Benton v. Bengot, (10 Sergeant & Rawle, 240); Aldrech v. Henney, (4 Conn. Rep. 280); Curtis v. Gibbs, (Pa. Rep. 405,)

Harris v. Hardeman et al.

they say: "This doctrine does not depend merely upon ad-judged cases; it has a better foundation; it rests upon a principle of natural justice. No man is to be condemned without the opportunity of making a defence, or to have his property taken from him by a judicial sentence, without the privilege of showing, if he can, the claim against him to be unfounded." The court then proceed to say, "But it is contended, that if other matter may be pleaded by the defendant, he is estopped from asserting any thing against the allegation contained in the record. It imports perfect verity, it is said, and the parties to it cannot be heard to impeach it. It appears to me, that this proposition assumes the very fact to be established, which is the only question in issue. For what purpose does the defendant question the jurisdiction of the court? Solely to show that its proceedings and judgment are void, and, therefore, the supposed record is, in truth, no record. If the defendant had not proper notice of, and did not appear to, the original action, all the State courts, with one exception, agree in opinion, that the paper introduced as to him, is no record, but, if he cannot show, even against the pretended record, that fact, on the alleged ground of the uncontrollable verity of the record, he is deprived of his defence, by a process of reasoning that, to my mind, is little less than sophistry. The plaintiffs, in effect, declare to the defendant—the paper declared on is a record, because it says you appeared; and you appeared, because the paper is a record. This is reasoning in a circle. The appearance makes the record uncontrollable verity, and the record makes the appearance an unimpeachable fact. Unless a court has jurisdiction, it can never make a record which imports uncontrollable verity to the party over whom it has usurped jurisdiction, and he ought not, therefore, to be estopped from proving any fact which goes to establish the truth of a plea alleging the want of jurisdiction."

By the same court, this doctrine is affirmed, in the case of Holbrook v. Murray, 5 Wendell, 161. In the case of Denning v. Corwin & Roberts, 11 Wendell, 648, it was ruled, "That a judgment in partition, under the statute, where part of the premises belonged to owners unknown, was not valid, unless it appear, upon the face of the record, that the affidavit required by the statute, that the petitioner, or plaintiff in partition, is ignorant of the names, rights, or titles of such owners, was duly presented to the court, and that the notice, also, required in such cases, was duly published." And Chief Justice Savage, in delivering the opinion of the court, said: "On the part of the plaintiff, it is contended that the judgment in partition is void, for want of jurisdiction in the court, the requirements of the statute not having been complied with; and, on the part of the

29*

defendants, it is insisted that it. is conclusive until reversed o
set aside, that it cannot be attacked collaterally, and that the
defendants, being *bonâ fide* purchasers, are entitled to protec-
tion.   That a judgment is conclusive upon parties and privies,
is a proposition not to be denied; but if a court has acted with-
out jurisdiction, the proceeding is void, and if this appear on
the face of the record, the whole is a nullity."   After quoting
the opinion of Chief Justice Thompson, in Borden *v.* Fitch,
15 Johnson, 121, Chief Justice Savage goes on to say : " With
respect to the proceedings in partition, now the subject of con-
sideration, there can be no doubt that the court, in which the
judgment was rendered, had jurisdiction of the subject of
partition; but, to authorize a judgment of partition, the parties
must be before the court, or it must be shown to the court that
some of them are unknown; and this must appear by the record,
where the proceeding is against owners unknown; it is a pro-
ceeding *in rem*, and nothing is to be taken by intendment. There
is avowedly nothing like personal notice to the parties interested
as defendants; they are not even named; and the right of the
plaintiff depends entirely upon the fact, to be proved by affidavit,
that the owners are unknown."   The Chief Justice, after show-
ing the insufficiency, by proof of the affidavit, according to the
requisition of the statute, says : " The record then states, that at
a subsequent day the plaintiffs appear, by their attorney, and
the parties unknown being solemnly demanded, come not, but
make default.   The statute gives the court no jurisdiction to
take any steps against unknown owners, until notice has been
published according to the statute.   Should not the record,
therefore, show that it had been made to appear to the court, by
affidavit, that the owners were unknown to the plaintiffs, and
that such notice as the statute requires, had actually been given?
Suppose a judgment record is produced, in which the plaintiff
declares upon a promissory note, and the record does not show
that the defendant is in custody, or has been served with pro-
cess, and yet the court render judgment by default, would not
such a record be an absolute nullity ? "   In the case of Wilson
et al. *v.* The Bank of Mount Pleasant, reported in the 6th of
Leigh, Tucker, President of the court, thus announces the law:
" This is an action upon a judgment of the State of Ohio,
which, it is contended, is conclusive in the courts of Virginia,
upon the principles of the Constitution of the United States.
It is unnecessary, in this case, to go into the question of the
construction of that clause of the federal compact which relates
to the, effect of judicial proceedings of the several States in
other States, for it seems to be agreed, on all hands, that the
doctrine of the conclusiveness of the judgments of the several

States, is to be taken with the, qualification, that, where the court has no jurisdiction over the subject-matter, or the person, or where the defendant has no notice of this suit, or was never served with process, and never appeared to the action, the judgment will be esteemed of no validity." With this doctrine entirely agrees another doctrine of the Supreme Court of Virginia, in the case of Wynn v. Wyat's Adm'r, 11 Leigh, 584, in which last case the court say, "That the appearance of the defendant, in term, and his motion to quash the attachment irregularly issued, and to set aside the proceedings at the rules, founded upon it, was not an appearance to the action, dispensing with farther and proper process; that the award of the *alias* summons was proper and necessary; and that the proceedings on that subsequent process cannot be sustained, since, confessedly, it was not duly served." But the decision which should be decisive upon the question now before us, is a decision of this court, in the case of Hollingsworth v. Barbour et al., in the 4th of Peters, p. 466. That was a case exhibiting the following features. A title had been made to land, by deed from a Commissioner, acting under a decree in Chancery, in the State Court in Kentucky, in which the "unknown heirs" of a person from whom title was deduced, were made defendants, and the decree, as against those heirs, was taken by default, after order of publication. The grantee of the Commissioner filed his bill, to obtain possession of the lands, against various persons who had taken possession thereof. The Circuit Court of the United States dismissed the bill, upon the grounds that, at the date of the proceedings in the State Court, (under which the conveyance of the Commissioner purported to have been made,) there was no law of the State authorizing those proceedings against the unknown heirs of the original owner of the land, and the decree taken upon those proceedings, by default against them, and, as they never had personal notice of the suit, the decree by default and the title made by the Commissioner, were null, as respected either those heirs, or the persons in possession of the lands. The very lucid argument of Mr. Justice Trimble, in the Circuit Court, which was adopted literally and *in extenso*, by this court, is too long for insertion here, but one or two of the conclusions reached by him, and affirmed by this court, in the words of that Judge, may be noticed. "The principle," said that Judge, and said this court in confirmation, "is too well settled, and too plain to be controverted, that a judgment or decree, pronounced by a competent tribunal, against a party having actual, or constructive notice, of the pending of the suit, is to be regarded by every other coordinate tribunal, and that, if the judgment or decree be errone-

ous, the erro. can be corrected only by a supreme appellate tribunal. The leading distinction is between judgments and decrees merely void, and such as are voidable only. The former are binding nowhere, the latter everywhere, until reversed by a superior authority. The suit and decree are against the unknown heirs of John Abel Hamblin. Instead of personal service of process upon the defendants in the suit, an order of publication was made against them; and, upon a certificate of the publication of this order, for eight weeks, in an unauthorized newspaper, being produced and filed in the cause, the bill was taken *pro confesso*, and, at the next succeeding term, the final decree was entered, directing the conveyance of the land to the complainant. Again, that Judge and this court speaking through him, say: " It would seem that the court acted without authority, and that the decree is void, for want of jurisdiction in the court. But if not void as being *coram non judice*, it is void and wholly ineffectual to bind or prejudice the rights of Hamlin's heirs, against whom the decree was rendered, because they had no notice, either actual or constructive. The principle of the rule, that decrees and judgments bind only parties and privies, applies to the case; for, though the unknown heirs of Hamlin are affected to be made parties in the bill, there was no service of process, nor any equivalent, to bring them before the court, so as to make them, in the eye of the law and justice, parties to the suit." Here, again, it should be borne in mind, that this is not an instance of reversal by an appellate tribunal, for error or irregularity in an inferior court, but a test, collaterally applied by an independent authority, to the character of proceedings, as void or voidable in their nature.

At this point it is proper to advert to the character and effect of the process in the suit of Harris and Hardeman, as constituting service upon the defendants in that suit, and thereby investing the court with jurisdiction over their rights. If the rule prescribed by the statute of Mississippi, already referred to, is to govern in this case, it is presumed that a doubt will, or can hardly be raised as to the insufficiency of the service, as there are not less than three instances in which the requisites of the statute have not been complied with. In the first place, it is not shown, by the return, that the defendant could not be found, which should have been shown, in order to justify the substitution of any other in lieu of personal service. Secondly, it is not shown that a copy of the process was left, either with the wife of the defendant, or with some other free white person above the age of sixteen years, being one of the family of the defendant. Thirdly, it is not stated or proved that a copy was left at some public place of the dwelling-house of the defendant,

he being from home, and no free white person, as above de-scribed, being found there, willing to receive the process.   But it has been contended, that, by a rule adopted by the Judge of the District Court, a mode for the service of process has been prescribed, differing from that ordained by the statute of Missis-sippi, and dispensing with several of the requisites insisted on by the statute, and that the service in the suit in the Circuit Court was in conformity with the rule of the District Judge. Forbearing, for the present, any inquiry as to the validity of the rule made by the District Judge, under the decision of this court, in the case of Amis v. Smith, 16 Peters, 303, we pro-ceed to compare the proof of service as apparent upon the re-turn of the marshal, with the requirements of the rule in ques-tion.   This rule has been already quoted.   The return of the marshal has also been given *totidem verbis*.   It will be seen that the reason assigned in the rule, as forming the justification for dispensing with personal service, is not stated in the return of the officer, and there is an entire omission to give the date or time preceding the term of the court to which the process was returnable, so as to show that the plaintiff was authorized to take a judgment by default, in virtue of a legal constructive notice, and a failure of appearance.   Whether, therefore, the statute of Mississippi, or the rule made by the District Judge, be regarded as operative, there was, in the suit in the Circuit Court, neither notice by personal service of process, nor notice by legal construction.   The judgment by default, therefore, must be regarded as obnoxious to every impeachment of its efficacy which can flow from its having been entered against one who was never a party in court, with respect to the pro-ceedings upon which that judgment was taken.   But there is another view of the questions raised in this cause, which is equally, or even more conclusive in favor of the decision now under review.   At the time of the motion to the Circuit Court to quash the forthcoming bond and to set aside the judgment by default, that judgment was still unsatisfied, and was in the progress of execution, and the forthcoming bond, filed in the clerk's office, according to the laws of the State, was properly a part of the process of execution, the *fieri facias* being sued out therein from the office without any order of the court.   The proceedings then, still being as it were *in fieri*, and not termi-nated, it was competent for the court to rectify any irregularity which might have occurred in the progress of the cause, and to do this either by writ of error *coram vobis*, or by *audita que-rela* if the party chose to resort to the latter mode.   If this position be maintainable, then, there would seem to be an entire removal of all exception to the judgment of the Circuit Court,

as it is believed to be the settled modern practice, that in all instances in which irregularities could formerly be corrected upon a writ of error *coram vobis* or *audita querela*, the same objects may be effected by motion to the court, as a mode more simple, more expeditious, and less fruitful of difficulty and expense. In this case the cause was still under the control and correction of the court, for the enforcement of its judgment and the supervision of its own process, and in the exercise of this function, it was competent for it to look back upon the entire progress of the case, up to the writ and indorsements thereon, under the rule already stated, as applicable to judgments by default, and to correct any irregularities which might be detected. In the present case there is less show of objection to such action, on the part of the court, as it affects the rights of no third parties, but is limited in its consequences to the parties to the suit only. We order the judgment of the Circuit Court to be affirmed.

Mr. Justice McLEAN, Mr. Justice WAYNE, and Mr. Justice GRIER, dissented.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of Mississippi, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court, on the motion to quash the forthcoming bond and to set aside the original judgment as set forth in the record of this cause, be and the same is hereby, affirmed with costs.