Winship *v.* Conner.

## WINSHIP *v.* CONNER.

When it is made to appear to the court that the defendant had been absent from his home and family for more than seven years before the suit was brought, without having been heard from, the court will not render judgment, unless the presumption of death is repelled.

Nor is the presumption affected by proof of absence, so long continued as to render it probable that he had wholly abandoned his old domicil.

THIS was an action of assumpsit against Napoleon B. Conner, commenced November, 13, 1858, by the attachment of all the defendant's real estate in Henniker, and entered at the March term, 1859, and notice was given by publication in the New-Hampshire Statesman, but no appearance was ever made by the defendant himself.

At the August term, 1859, Sally H. Marsh, a sister of the defendant, and daughter of James Conner, late of Henniker, who died in November, 1858, leaving real estate in that town, was permitted to appear and defend, upon giving the usual bond, which was done at the February term, 1860.

At the August term, 1859, W. E. Chandler was appointed a commissioner to report the facts; and at the

Winship *v.* Conner.

present term the commissioner made a report, a copy of which is part of the case.

Sally H. Marsh then moved that the action be dismissed, upon the alleged ground that the defendant was dead when the suit was commenced, and when the father died; in which case she, with four brothers and sisters, would inherit the share that would have gone to the defendant, had he lived, and part of which was attached.

The commissioner's report stated that James Conner, the father of the defendant, died at Henniker, in November, 1858, at the age of eighty-seven years, leaving real estate in said town of the value of about five thousand dollars, and some personal property. His heirs were his children, Sally H. Marsh, William Conner, Abigail B. Clough, Catharine Conner, Arvilla A. Bean, and Napoleon B. Conner, the defendant, if living.

Napoleon B. Conner was born in 1811, at his father's in Henniker, and resided there with his father until he was eighteen years old, when his father "gave him his time;" after which he still continued to reside and make his home in Henniker, at times farming, at times peddling, with the exception of one year's absence in Massachusetts, until 1843. About six or seven years prior to 1843 he married, and, until 1843, resided, with his wife, without having children, in a house upon about one acre of land, owned by him, about one mile from his father's house, in Henniker. During this time he quarreled with his wife, she charging him with unfaithfulness to her, and that he was guilty of having criminal intercourse with other women; and he also became considerably involved in debt, beyond his means to pay. In April, 1843, his quarrels with his wife and his pecuniary embarrassment increased to such an extent that he left Henniker, and never returned there. It appeared that he left, secretly, about eight o'clock in the evening, discouraged at his pecuniary condition, having concluded never again to live

Winship *v.* Conner.

with his wife, and fearing that prosecutions might be commenced or instigated by her against him, on account of his intercourse with other women, and that he left with no definite intention of ever again returning to Henniker.

After his departure he wrote to his father, or to some member of his father's family, occasionally, as often as every year, until 1849. None of these letters, except the letter a copy of which was annexed to the report, had been found, and it did not appear that any of the letters to his father or family were ever answered. In 1848 he also wrote Parrott Marsh, of Henniker, the husband of his sister, Sally H. Marsh, a copy of which letter was annexed to the report, which letter was immediately answered by Hiram Marsh, a son of Parrott Marsh, his father being then dead, saying that he had no money to send him, but that he would inquire of other friends whether or not they would send him any. Another letter, which could not be found, was received by him in due course of mail, in reply, from Napoleon, which was immediately answered, and no further reply received thereto. All his letters were signed by the assumed name of James Haslam; and it appeared that, up to 1849, he resided and worked, mainly at farming, at the west, most of the time in Illinois.

After Napoleon's departure from Henniker, in April, 1843, his house, land, and all other property, were attached and disposed of by his creditors, and were not sufficient to pay his debts. His wife resided in Henniker but a few months after he left. His father continued to reside there on a farm until his death, in 1858. His sisters, Sally H. Marsh and Catharine Conner, and his brother, William Conner, have ever since resided in Henniker. His sisters, Abigail and Arvilla, now reside, and for some years have resided at the west.

It did not appear that since 1849 Napoleon B. Conner had been heard of at any place or by any person.

Winship *v.* Conner.

*L. T. Flint*, for the plaintiff, contended that the defendant had long since ceased to have any home in this state, and, therefore, his being absent from this state the last seven years could not be considered as absence from home, and so the presumption of death from not being heard from here would not exist; and he cited *Loring* v. *Steineman*, 1 Met. 211; C. & H.'s Phill. Ev. 489; *Spurr* v. *Trimble*, 1 Marshall 278; *Hull* v. *Commonwealth*, Hardin 479. He also urged that no mischief could arise from rendering a judgment, for the reason that, if the defendant was actually dead, the judgment would avail nothing against Sally H. Marsh, or the other heirs of James Conner.

*George, Foster & Sanborn*, for Sally H. Marsh, contended that the presumption of death was not removed by the length of the absence, and that the defendant, being dead, the court had no jurisdiction to render a judgment.

BELLOWS, J. On the evidence reported, must the court regard Napoleon B. Conner as dead; and if so, will it, notwithstanding, render a judgment in this case?

First, as to the proof of his death. He formerly lived at Henniker, was married, had difficulty with his wife, and in April, 1843, left this part of the country, and has never returned, leaving his wife, father and friends at Henniker. He occasionally wrote to his friends here, from the West, and mostly from the state of Illinois, until 1849; since which he has not been heard of.

In *Smith* v. *Knowlton*, 11 N. H. 191, it is held that evidence that a party has not been heard of for the term of seven years rebuts the presumption of the duration of life. See cases cited by *Parker*, C. J.; and so is *Forsaith* v. *Clark*, 21 N. H. 409; 1 Greenl. Ev., sec. 41, and notes and cases cited; Matthews on Pres. Ev. 291; 2 Stark. Ev. 457; 3 Stark. Ev. 1120; 2 C. & H.'s Phill. Ev. 489, note 381; *Newman* v. *Jenkins*, 10 Pick. 515.

But, it is contended, that to give rise to such a presumption, the party must be absent from his home and usual place of abode — the place where he was expected to be — for seven years. If this were so, the longer he was absent the stronger would be the proof that he had changed his domicil, and, therefore, the proof that he was absent from home would be diminished. But the cases do not sustain this distinction, neither do we perceive any solid foundation for it, and none such is suggested in *McConnell* v. *Knight*, 5 Johns. Ch. 264, nor in *Smith* v. *Moulton*, or *Forsaith* v. *Clark*, before cited.

On the evidence reported, the presumption, then, is that Napoleon B. Conner is dead, and was so when this suit was brought. Will the court, then, render a judgment?

In *Taylor* v. *Harris*, 3 B. & P. 549, it was held that where a verdict was rendered, after the death of the defendant, and judgment entered upon it, the judgment will be set aside, on application to the court; although, if he die after the first day of the term at which the cause is tried, it will not be set aside, as the proceedings are referred to the first day of the term. *Freland* v. *Champneys*, 4 Taun. 884. After the death of a defendant pending a suit, all proceedings are stayed till his executor or administrator is made a party. *Ela* v. *Rand*, 4 N. H. 54. In *Parker* v. *Badger*, 26 N. H. 466, after the death of the defendant and a decree of insolvency, a motion was made to enter up judgment as of a previous term, before his death, so save an attachment. The decision was that "the court had no jurisdiction to determine the merits of the action, or to order any disposition of it except its discontinuance." And it is difficult to see how any other rule can be applied, when the party defendant was dead before the suit was commenced. In *Smith* v. *Moulton*, 11 N. H. 191, it was held that a judgment in a suit where the sum demanded in damages was not sufficient to give jurisdiction, was void, and, therefore, it was no answer to the present

suit that by such void judgment the defendant here had been charged as trustee. The court say that the former suit would have been dismissed, upon a motion calling the attention of the court to it. So when no damages are demanded, as in 2 N. H. 322. In *Wild* v. *Sands*, 2 Str. 718, the court refused to enter up judgment on an old warrant of attorney, it appearing that the defendant was dead. The same doctrine is laid down in *Chancy* v. *Needham*, 2 Str. 1081, although a judgment had been entered up upon an affidavit, sworn to the day before, that the defendant was living; and the court refused to disturb it, although it was shown that the defendant died on the evening of the day judgment was entered, the judgment being as of the first day of the term.

As a general rule, the want of such jurisdiction over the persons of parties, as is usually acquired by the service of process or notice, renders the proceedings void. *Bell*, J., in *State* v. *Richmond*, 26 N. H. 241; and so is *Smith* v. *Knowlton*, before cited. In *Harris* v. *Hardeman*, 14 How. 334, it is decided that a court may set aside a judgment of a former term, rendered on default of a defendant who had no notice of the action. Such a judgment being merely void, the court has power summarily to declare it to be inoperative, and to stop all proceedings under it. In this case, the authorities are examined, and the conclusion reached, that judgments, rendered without notice to the defendant, are merely void.

Applying these principles to this case, we think that, as it appears before us, the defendant must be presumed to have been dead before the commencement of the suit, and, therefore, no valid judgment can be rendered. It is familiar to all, that on the suggestion of the death of the defendant, pending the suit, all proceedings must stop, until his representative is summoned in, and this even when the action by law survives; and it is for the plain reason that there is no party before the court. The case

Winship *v.* Conner.

where the defendant was dead before the commencement of the suit is much stronger, inasmuch as, in addition to the want of a party, there has been no notice. To render a judgment under circumstances that would render it a nullity, and that would be vacated on motion, would not, we think, be warranted by the law of the land. If the fact of the death of the defendant was clearly shown, the duty of the court to dismiss the suit, upon the matter being shown, would not be disputed; and in this case, we are bound, on this evidence, to presume his death. That he may, nevertheless, be living, is true, but until that is made to appear, we have before us no party and no jurisdiction, to render a valid judgment. If it were a matter addressed to the discretion of the court, we should hesitate to render a judgment that may be used, and is, proba bly, designed to be used, in such way as to be a clo꜀ d upon the title of Mrs. Marsh. Indeed, it is by no means clear that, in any subsequent proceedings on such a judgment, the rendering it might not be some evidence that the parties were then living, so as, at least, to shift the burden of proof, and operating like the grant of administration or the probate of a will, which are evidence of the death.

It is, also, objected that Sally H. Marsh has no right to appear and move the dismissal of the suit, but to say nothing of her having been already admitted, it is sufficient that the death is made to appear by suggestion of counsel, acting as *amicus curiæ* to prevent abuse.

The action must, therefore, be dismissed.