JOHN COLTART *vs.* ESTHER HAM and others.

April Term, 1875.

INJUNCTION BOND—CONDITIONS.—A clerk has no power to insert in an injunction bond conditions not prescribed by law or the fiat of a judge, and any condition not thus authorized is void.

SAME—JUDGMENT—MOTION.—A judgment entered upon an injunction bond

in the cause in which it was taken is, in legal effect, a judgment by motion, and void unless it contain on its face a sufficient recital of facts to show that the court had jurisdiction to render it.

SAME—CONDITION—DAMAGES ON DISMISSING BILL.—To subject the obligors in an injunction bond, given under the Code, § 4439, subsec. 2, to costs and damages "on dismissing the bill," a formal dismissal is not necessary; it is sufficient if the court refuse to grant the relief sought upon the matter to which the injunction relates.

VOID JUDGMENT—EXECUTION—SUPERSEDEAS.—The court may, on petition, supersede and quash an execution on a void judgment.

ERROR CORAM NOBIS—ERROR OF LAW.—A writ of error *coram nobis* will not lie to correct an error of the court in construing a bond, or in erroneously holding the parties liable upon facts before it.

*R. Ewing*, for petitioner.

*G. M. Fogg, jr.*, for defendants.

THE CHANCELLOR:—On the 9th of April, 1869, in the case of *John Coltart* v. *Bank of Tennessee and others,* and upon the petition of Esther Ham and others, a decree was rendered by this court in favor of the said Esther Ham and others, against the complainant, John Coltart, for $324.15, with interest from the 24th of February, 1869. The decree also divested the title to a certain house and lot on Summer street, in Nashville, out of the Bank of Tennessee, and vested it in the Hams. On the 13th of July, 1870, a writ of possession issued to put the Hams in possession of this lot. Coltart, who was in possession, thereupon filed what he called a bill of review, but which is in reality an original bill, against the Hams, claiming title to the lot, and for the purpose of having his right thereto declared, and an account of the rents and his share ascertained. The only extraordinary process asked for was "that the defendants be enjoined from receiving any further rents of said property."

The fiat of the Chancellor upon this bill is that, upon complainant "giving bond and security in the sum of $600, the clerk and master will issue an injunction restraining the defendants from receiving the rents of the property mentioned in the pleadings, or in anywise disturbing said complainant in the possession thereof."

The bond executed under this order recites that Coltart

prayed and obtained a writ of injunction to enjoin the defendants from receiving the rent for the property situated on Summer street, decreed to the Hams, or from in any way disturbing the complainant in the possession thereof, until the further order of this court, and is conditioned to be void if Coltart shall prosecute the injunction with effect, or, in case he fails therein, shall pay the obligees such costs and damages as shall be awarded and recovered against the said Coltart in any suit or suits which may be brought for wrongfully suing out said injunction, and shall, moreover, abide by and perform such orders and decrees as the court may make in said cause, and pay such costs and damages as the court, may order.

Such proceedings were had under Coltart's so-called bill of review that, upon a reference, the master reported him as indebted to the Hams in the sum of $900 for rent of the premises from 1856 to 1861, inclusive, and in the further sum of $679.41 interest thereon to the 28th of July, 1874, making, in all, $2,009.11. On the 23d of October, 1874, a decree was rendered confirming this report as unexcepted to. The master had mentioned in his report the names of the securities on Coltart's injunction bond. On this recital, the decree, after confirming the report, proceeds thus : "And it appearing to the court that the securities on the injunction bond, given in the penal sum of six hundred dollars by the complainant, were John Beatty, A. A. Ashbrooks, and John Douglass, it is therefore ordered and adjudged that the clerk and master of this court, for the use of the defendants herein, recover of the said John Coltart, the complainant, and his said securities, the sum of six hundred dollars as of July 28, 1874, for which execution may issue. A further decree is given against Coltart alone for $1,409.11, the residue of the sum of $2,009.11 as reported by the clerk.

On the 15th of February, 1875, John Douglass, one of the sureties on Coltart's bond, filed his petition for a *supersedeas* of the execution issued on this judgment, until the court could have an opportunity of enquiring into the merits

of the matters of the petition. There is a general prayer for such other, further, and different relief as the nature of the case may demand. A *supersedeas* was ordered accordingly, upon proper bond.

The petitioner states that on the 10th of November, 1870, by order of the Chancellor, a receiver was appointed in the case of *Coltart* v. *Ham and others,* who took possession at once, turning the said Coltart out, and continued to rent the lot pending the litigation. And the gravamen of the petition is that the sureties on the bond were only liable for the rent which accrued between the 13th of July, 1870, when the injunction issued under Coltart's bill, and the 10th of November, 1870, when the receiver took possession. The petitioner insists that it was error to take a judgment against the sureties for more than the rent during this period, and that it was error to take a judgment at all without a reference to the master to ascertain the actual damages.

The petitioner has treated the petition as being for a writ of error *coram nobis,* and has proceeded to file a formal assignment of errors, viz. :

1st. That it appears, from the face of the report of the clerk and master on which the decree is based, that the whole of the indebtedness of Coltart to the Hams accrued prior to the 13th of July, 1870.

2d. That the clerk erroneously stated in his report that the petitioner was on Coltart's injunction bond, thereby leading the court to believe that the petitioner was on a bond securing the indebtedness found due from Coltart, when such was not the fact.

The defendants have demurred to this assignment of errors upon the ground that the errors relied on are not *errors of fact,* and that the petitioner was a party to the cause, affected with notice, and does not assign any error of fact which he was prevented by disability from showing, or that he was prevented from making defence by surprise, accident, mistake, or fraud, and without fault on his part.

I had occasion recently, in the case of *Ranning* v. *Reeves,*

2 Tenn. Ch. 263, to consider the power of the judge in ordering, and of the master in taking, bonds executed as a preliminary requisite to the issuance of extraordinary process, and how far the conditions of such bonds were obligatory on the sureties.  I there held that, in the absence of any statutory provision prescribing the bond in a particular case, it is within the competency of the judge to order, and of the clerk to take, a bond with such conditions of liability as the judge may prescribe.  That, where the statute prescribes the conditions, the surety will not be liable beyond the statutory requirements.  And that the clerk, his duty being merely ministerial, has no power to take any bond binding on the surety, except such as either the law or the fiat of a judge, or other officer authorized to grant fiats, may prescribe.  And I there held that the securities were not bound by the conditions of the bond, because those conditions were not authorized by the order under which the bond was taken.

In the present case the fiat of the Chancellor on Coltart's so-called bill of review fixed the penalty, but not the conditions, of the bond, on the execution of which the injunction was to issue.  The master had, therefore, no authority to make conditions, unless there was some law directing the requirements of the bond.  But the Code, § 4439, does prescribe the conditions of the bond to be taken by the clerk before issuing a writ of injunction, the conditions differing in the case where the injunction is sought to enjoin a judgment at law, and where the investigation of the questions involved are sought to be drawn into chancery before judgment at law.  Literally, the provisions of the Code are limited to cases where an injunction is sought against a judgment already recovered at law, and where it is sought against the institution or prosecution of proceedings at law.  It would be clearly within the equity of the statute, however, if the judgment for money, sought to be enjoined, had been rendered by the chancery court.  And it would, perhaps, be also within the equity of the statute, under the

second subsection of § 4439, if the bill simply sought relief in equity, and asked an injunction, without specially praying for an injunction against the institution of a suit at law. In other words, the Code does specify what conditions the clerk may insert in an injunction bond before issuing the writ, if the judge neglect to give him special directions.

Here the prayer of the bill was " that the defendants be enjoined from receiving any *further rents* of said property." The fiat of the judge is to restrain the defendants " from receiving the rents of the property mentioned in the pleadings, or in anywise disturbing said complainant in the possession thereof." The latter clause, it will be noticed, goes beyond the prayer of the bill, but the complainant would be clearly bound by it if he elected to act under it. The injunction is not against a money judgment, either at law or in equity. It is merely to stay the receiving of accruing rents, and the interference with the possession of land. Either there is no statute prescribing the conditions of a bond in such a case, or the Code, § 4439, subsec. 2, prescribes those conditions. In the former case the bond would be without any authority, and void. In the latter case it would only be good for the conditions of the statute. But the condition prescribed by the statute is " to pay costs and damages awarded by the chancery court on dismissing the bill." This, then, is the only condition which the clerk had a right to impose upon the sureties, even if he had that right. The bond was void beyond this requirement.

The bond is conditioned, among other conditions, " to pay such costs and damages as the court may order." It is true the bond does not add, " on dismissing the bill." But these words mean, in substance, on the refusal of the court to grant the relief sought upon the matter to which the injunction relates. Such refusal is, in effect, a dismissal of the bill in that regard. It does not require a dismissing of the bill *in toto*, or even a formal order of dismissal at all, to make the bond operative. In this view, upon the least technical construction of the condition, the sureties

were only liable for such " costs and damages" as the court might order, and such costs and damages could only relate to the rents which the defendants were enjoined from receiving, and the possession they were enjoined from disturbing. These rents and this possession were, plainly, rents and possession after the suing out of the injunction, and the bond could, upon no rules of interpretation, be made to cover rents which accrued from the year 1856 to 1861, inclusive, or the interest thereon. The decree, therefore, in giving judgment against the sureties for any part of such rents and interest, was erroneous.

This error constitutes the burden of the petition, and is the first error assigned in the formal assignment of errors. The real difficulty in the case is whether it is an error of fact, within the meaning of the Code, § 3116. The relief conceded by that section is confined to errors of fact occurring in the proceedings, which the petitioner, from want of notice, had no opportunity of correcting, or, without fault on his part, was prevented from correcting by surprise, accident, mistake, or fraud. The error must be one of fact which was not before the court when the judgment was rendered. *Williams* v. *Crawford*, 1 Swan, 341. But the fact that the rents for which the sureties were held liable accrued long before the suing out of the injunction was before the court. The bond itself, was, too, in contemplation of law, before the court, and the error was an erroneous deduction of the court. It is an error to be corrected by writ of error to the supreme court, or by a bill of review for error apparent on the face of the record, but not, I fear, by a writ of error *coram nobis*.

The other error assigned, viz., that the clerk erroneously reported that the petitioner was on Coltart's injunction bond, was not an error, but the fact. The error was on the part of the court, in construing the bond to cover the debt reported, and was clearly an error of law.

If the petitioner's application is to be treated as a writ of error *coram nobis*, it must fail, leaving the petitioner to his plain remedy of a writ of error or bill of review.

But I am of opinion that the judgment in question is absolutely void. The decree, it will be remembered, simply recites the names of the sureties and the penalty of the bond, without stating any other fact to justify the rendition of a judgment against the sureties. A judgment upon a bond taken in the progress of the cause is required to be upon motion. Code, § 3109. It may be rendered without notice, but it is a formal proceeding, and must state on its face facts sufficient to show that the court has jurisdiction to render it. *Rucker* v. *Moore*, 1 Heisk. 726. I do not mean that the use of the words "upon motion," or even equivalent words, are absolutely necessary. But the judgment must be considered as rendered upon motion, and its validity determined accordingly. Nor do I think that a formal setting out of all the facts is in all cases absolutely necessary. Where the law prescribes the conditions of a bond, and the facts stated in the decree show that the persons against whom judgment is taken are parties to such a bond, and the amount of the judgment does not exceed the usual or the statutory penalty, a very informal judgment may be good. But where the decree itself shows that the bond upon which judgment is taken is not a statutory bond, and must have been a peculiar bond, directed by the fiat of a judge; or where it shows a statutory bond, but that the judgment cannot be authorized by the bond—in either case the judgment is void unless it recite facts sufficient to sustain the judgment. The only statutory bond, as we have seen, which could have been taken in this case was one conditioned for costs and damages. This judgment can only be sustained upon that part of the bond which calls for damages. But neither the master's report nor the decree shows any damages. They only show a debt. The decree, in order to be valid, should have shown on its face that damages were ascertained by a reference, by a jury, or by the court upon the facts. It does not show that damages were either ascertained or adjudged. The judgment is not merely erroneous, it is void.

The remedy to set aside, formally, a void judgment is by an original bill, this being a well recognized head of ·chancery jurisdiction, even if the judgment be void on its ⁻face. *Caruthers* v. *Hartsfield*, 3 Yerg. 366. But it is equally well settled that, if the judgment is sued upon, its invalidity :may be shown by plea. *Smith* v. *Wallace*, 4 Yerg. 572; *Stump* v. *Shepard*, Cooke, 190. And, if it is sought to be ⁻enforced by execution, the execution may be superseded and ·quashed. *Mabry* v. *State*, 9 Yerg. 207 ; *Bartlett* v. *Wilkerson*, ·cited in King's Dig. § 11,208. And see *Harris* v. *Hardeman*, 14 How. 334, and *Hopkins* v. *Godbehire*, 2 Yerg. 241.

The petition in this case asks for a *supersedeas*, which is .granted by the Chancellor. It asks, also, for a writ of error ·*coram nobis*, which has never been granted. The assignment of errors and the proceedings thereon were without :authority. The Code, § 3111, contemplates an order of ⁻the court for the writ, which would be an adjudication of ⁻the applicant's right to it, although no writ ever in fact issues. Car. Hist. L. S. § 540. In the absence of such ·order, the application is only to supersede the execution, a well-established mode of quashing an execution. *Mabry* ⁻v. *State*, 9 Yerg. 207 ; *Edmundson* v. *King*, 1 Tenn. 425. Being satisfied that a writ of error *coram nobis* will not lie ⁻to correct the errors complained of, and that the assignment of errors was made without the necessary order, the .assignment will be stricken out and the writ refused.

The court may be in error in refusing the writ, and the petitioner has the right to stand upon the ground taken by him. If so, the demurrer will be sustained, with costs.

But if the petitioner chooses to withdraw his prayer for a writ of error *coram nobis*, and ask that the execution be quashed, I will permit him to do so. This will require no change, even in the form of the petition, for it is now a peti-tion for a *supersedeas*, and the general prayer for relief ·enables the court to grant such relief as the petitioner may be justly entitled to. A complainant, or petitioner, in this ·court may abandon any part of his prayer for relief, or the

court may refuse such prayer, without prejudice to such relief as the nature of his case and the other prayers of his. pleading may entitle him. The defendants, in this view, may demur anew, or stand upon their present demurrer,. which does go to the merits of the petition. In either event. the demurrer must be overruled. The defendants may answer the petition if they see proper. If they waive an answer, the execution will be quashed, with costs. The judgment is both void and unjust, and, although the court may not agree with the petitioner as to the proper form of relief,. the petitioner's right to relief is beyond question.