## UNITED STATES v. TURNER.
### No. 8971.

Circuit Court of Appeals, Eighth Circuit.
Jan. 28, 1931.

Peter B. Garberg, U. S. Atty., of Fargo, N. D.

Before KENYON and GARDNER, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge.

Christina P. Turner, the appellee, filed a bill against the United States praying that her title to a tract of land in North Dakota be quieted as against any claims of the United States and for an injunction against any disturbance of her title and possession and for general relief. She alleged ownership by purchase from F. C. Turner in 1922, and possession thereafter. She also alleged that a mistake was made in the deed executed by F. C. Turner by which he undertook to convey this land to her, so that the deed described another tract of land. There were other allegations of the recovery of a judgment by the United States against F. C. Turner, the issuance of an execution under the judgment, a levy on and sale of this land, and the issuance of a certificate pursuant to the sale, but no allegation of the value of the land.

An answer was filed for the United States by the district attorney, and a decree was entered in the case quieting the plaintiff's title and granting the injunction as prayed. At the following term, the United States filed a motion in the case to vacate the decree. Counsel for both parties submitted this motion to the court. The motion was overruled, and from that order this appeal is prosecuted.

The motion to vacate the decree alleged that the United States had title to the land prior to the decree because of a sale of the land to it under an execution in satisfaction of a judgment against F. C. Turner, the record owner of the land at the time the judgment was entered, and alleged that the court was without jurisdiction to enter the decree, as there had been no consent of the United States to the prosecution of the suit, and that

the appearance of the district attorney had not expressed the consent of the United States.

The government of the United States is not subject to suit without its consent; its consent is expressed only by a statute permitting suits against it; and the courts cannot go beyond the letter of such consent, where such consent has been expressed. United States v. Clarke, 8 Pet. 436, 8 L. Ed. 1001; Schillinger v. United States, 155 U. S. 163, 15 S. Ct. 85, 39 L. Ed. 108; Nassau Smelting Works v. United States, 266 U. S. 101, 45 S. Ct. 25, 69 L. Ed. 190; Morrison v. Work, 266 U. S. 481, 45 S. Ct. 149, 69 L. Ed. 394.

Any claim of jurisdiction to enter the decree rendered is founded upon the provisions of that part of section 24(20) of the Judicial Code (28 U. S. Code § 41(20), 28 USCA § 41(20) which gives the District Court jurisdiction.

"Concurrent with the Court of Claims, of all claims not exceeding $10,000 founded upon the Constitution of the United States or any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable."

In construing similar prior acts of Congress giving to the Court of Claims jurisdiction to hear and determine all claims founded upon any act of Congress or upon any regulation of an executive department, or upon any contract, expressed or implied, with the government of the United States, the Supreme Court held that only suits for the recovery of money from the United States could be maintained. The court said:

"It will be seen by reference to the two acts of Congress on this subject, that the only judgments which the Court of Claims are authorized to render against the government, or over which the Supreme Court have any jurisdiction on appeal, or for the payment of which by the Secretary of the Treasury any provision is made, are judgments for money found due from the government to the petitioner. And, although it is true that the subject-matter over which jurisdiction is conferred, both in the act of 1855 and of 1863, would admit of a much more extended cognizance of cases, yet it is quite clear that the limited power given to render a judgment necessarily restrains the general terms, and confines the subject-matter to cases in which the petitioner sets up a moneyed demand as due from the government." United States v. Alire, 6 Wall. 573, 575, 18 L. Ed. 947.

The Act of March 3, 1887, sometimes called the Tucker Act (24 Stat. 505), provided for the bringing of suits against the government of the United States either in the Court of Claims or in the Circuit or District Courts of the United States. The Court of Claims was given jurisdiction of all claims founded upon the Constitution of the United States or any law of Congress, except for pensions, or upon any regulation of an executive department, or upon any contract, expressed or implied, with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty, if the United States were suable, the District Courts of the United States were given concurrent jurisdiction with the Court of Claims of such matters where the amount of the claim did not exceed $1,000, and the Circuit Courts were given concurrent jurisdiction where the claim exceeded $1,000 and did not exceed $10,000. The Supreme Court in United States v. Jones, 131 U. S. 1, 9 S. Ct. 669, 671, 33 L. Ed. 90, in considering this statute, after referring to the decree in United States v. Alire, said:

"The sections of the act of 1863 referred to in this opinion are still in force, not being repealed by the act of 1887, which only repeals 'all laws and parts of laws inconsistent' therewith. Section 5, relating to appeals, is transferred to section 707 of the Revised Statutes, giving an appeal to this court 'where the amount in controversy exceeds $3,000;' and section 7, relating to the mode of paying judgments out of a general appropriation, and allowing interest where a judgment is affirmed, is contained in sections 1089, 1090 of the Revised Statutes. These sections are still the law on the subjects to which they relate, being necessary to the completion of the system, and not being supplied by any other enactments. Indeed, they are expressly retained. The fourth section of the act of 1887 declares that 'the jurisdiction of the respective courts of the United States proceeding under this act, including the right of exception and appeal, shall be governed by the law now in force, in so far

as the same is applicable, and not inconsistent with the provisions of this act;' and the ninth section declares 'that the plaintiff or the United States, in any suit brought under the provisions of this act, shall have the same rights of appeal or writ of error as are now reserved in the statutes of the United States in that behalf made, and upon the conditions and limitations therein contained.' These provisions undoubtedly include the court of claims as well as the district and circuit courts. So, in relation to interest, section 10 declares that 'from the date of such final judgment or decree interest shall be computed thereon at the rate of four per cent. per annum, until the time when an appropriation is made for the payment of the judgment or decree.' It seems, therefore, that in the point of providing only for money decrees and money judgments, the law is unchanged, merely being so extended as to include claims for money arising out of equitable and maritime as well as legal, demands. We do not think that it was the intention of congress to go farther than this. Had it been, some provision would have been made for carrying into execution decrees for specific performance, or for delivering the possession of property recovered in kind. The general scope and purport of the act are against any farther extension than that here indicated. The expression in the fifth section, referring to 'money or any other thing claimed, or the damages sought to be recovered,' on which so much reliance is placed by the appellees, cannot outweigh the considerations referred to, and operate to introduce entirely new fields of jurisdiction. It is one of those general expressions which must be restrained by the more special and definite indications of intention furnished by the context.

"We cannot yield to the suggestion that any broader jurisdiction as to subject-matter is given to the circuit and district courts than that which is given to the court of claims. It is clearly the same jurisdiction—'concurrent jurisdiction' only—within certain limits as to amount; and the language in which those limits are expressed furnishes an additional argument in favor of the conclusion which we have reached. It is declared 'that the district courts of the United States shall have concurrent jurisdiction with the court of claims * * * where the amount of the claim does not exceed $1,000,' etc. This language is properly applicable only to a money claim. Had anything but money been in the legislative mind the language would have been, 'where the amount or value of the thing claimed does not exceed $1,000,' etc."

An examination of the portions of the statutes cited by the court, and which were regarded by it as determinative of the questions, shows that the substance of sections 1089 and 1090 of the Revised Statutes as to the mode of paying judgments and as to the allowance of interest when a judgment is affirmed are now embraced in 31 U. S. Code §§ 225 and 226 (31 USCA §§ 225, 226). The portion of section 10 of the Act of March 3, 1887, quoted in the opinion, relating to interest after final judgment, is found in 28 U. S. Code, § 765 (28 USCA § 765). The portion of section 2 giving the District Courts concurrent jurisdiction with the Court of Claims when the amount of the claim does not exceed $1,000 is now expressed in 28 U. S. Code § 41(20), 28 USCA § 41(20), as jurisdiction "of all claims not exceeding $10,000." The provisions of section 707 of the Revised Statutes (section 242 Jud. Code [36 Stat. 1157]), giving an appeal to the Supreme Court when more than $3,000 was involved, was repealed and superseded by the Act of February 13, 1925 (section 13, 43 Stat. 941); (43 Stat. 939, 28 U. S. Code, § 288 [28 USCA § 288]), limiting the jurisdiction of the Supreme Court, but the main provisions of the statutes relied upon by the court remain substantially unchanged, and are persuasive that the provisions of section 24(20) of the Judicial Code (28 USCA § 41(20) do not give jurisdiction to a District Court to enter a decree quieting the title to lands or to grant an injunction restraining the United States from trespassing upon lands, in a suit brought against the government. United States v. McLemore, 4 How. 286, 11 L. Ed. 977; Hill v. United States, 9 How. 386, 13 L. Ed. 185; Belknap v. Schild, 161 U. S. 10, 16 S. Ct. 443, 40 L. Ed. 599; Holmes v. United States (D. C.) 78 F. 513; Welch v. Hamilton (D. C.) 33 F.(2d) 224. The appearance in such a suit by the district attorney would not confer the consent of the United States to such a decree. A court has the inherent power to vacate its judgments or decrees which are rendered without jurisdiction, upon motion made either at the term at which the judgment is rendered or afterwards. Pollitz v. Wabash R. Co. (C. C.) 180 F. 950; United States v. Wallace (D. C.) 46 F. 569; Shuford v. Cain, 1 Abb. U. S. 302, Fed. Cas. No. 12,823; Harris v. Hardeman, 14 How. 334, 14 L. Ed. 444; United States v. One Essex Touring Automobile (D. C.) 276 F. 28; In re Dennett (C. C. A.) 221 F. 350; 1 Freeman on Judgments, § 98; 34 Corp. Jur. 217. A judgment may be entirely void, even though the court might have ju-

risdiction of the parties and of the subject-matter. As was said by the court in Windsor v. McVeigh, 93 U. S. 274, 282, 23 L. Ed. 914:

"The doctrine invoked by counsel, that, where a court has once acquired jurisdiction, it has a right to decide every question which arises in the cause, and its judgment, however erroneous, cannot be collaterally assailed, is undoubtedly correct as a general proposition, but, like all general propositions, is subject to many qualifications in its application. All courts, even the highest, are more or less limited in their jurisdiction; they are limited to particular classes of actions, such as civil or criminal; or to particular modes of administering relief, such as legal or equitable; or to transactions of a special character, such as arise on navigable waters, or relate to the testamentary disposition of estates; or to the use of particular process in the enforcement of their judgments. Norton v. Meader [Fed. Cas. No. 10,351], Circuit Court for California. Though the court may possess jurisdiction of a cause, of the subject-matter, and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments. It must act judicially in all things, and cannot then transcend the power conferred by the law. If, for instance, the action be upon a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment in the penitentiary upon the defendant. If the action be for a libel or personal tort, the court cannot order in the case a specific performance of a contract. If the action be for the possession of real property, the court is powerless to admit in the case the probate of a will. Instances of this kind show that the general doctrine stated by counsel is subject to many qualifications. The judgments mentioned, given in the cases supposed, would not be merely erroneous; they would be absolutely void, because the court in rendering them would transcend the limits of its authority in those cases."

See, also, Standard Oil Co. v. Missouri, 224 U. S. 270, 32 S. Ct. 406, 56 L. Ed. 760, Ann. Cas. 1913D, 936.

■ But all courts recognize that, where the court has no jurisdiction over the subject-matter, the judgment is not merely voidable, but is absolutely void. 33 Corp. Jur. 1075. Mr. Freeman in his work on Judgments states:

"A void judgment is, in legal effect, no judgment. By it no rights are divested. From it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars any one. All acts performed under it and all claims flowing out of it are void. The parties attempting to enforce it may be responsible as trespassers. The purchaser at a sale by virtue of its authority finds himself without title and without redress. The first and most material inquiry in relation to a judgment or decree, then, is in reference to its validity. For if it be null, no action upon the part of the plaintiff, no inaction upon the part of the defendant, no resulting equity in the hands of third persons, no power residing in any legislative or other department of the government, can invest it with any of the elements of power or of vitality. It does not terminate or discontinue the action in which it is entered, nor merge the cause of action; and it therefore cannot prevent the plaintiff from proceeding to obtain a valid judgment upon the same cause, either in the action in which the void judgment was entered, or in some other action." 1 Freeman on Judgments, § 117.

Because the original decree in this case was void, the suit in which it was mistakenly entered was still pending, and the appellant had the right to ask that the entry of such a decree as had been rendered should be stricken from the records of the court as an impediment to a proper disposition of the suit. See Harris v. Hardeman, supra. While such an impediment existed, the refusal of the court to vacate the void decree was a final order which determined the rights of the parties in that suit.

■ The parties appeared before the court and submitted to the court the motion to vacate the decree. As the lack of jurisdiction to make the decree rendered was apparent on the face of the record, we think the court erred in refusing to vacate the decree. The order will be reversed and the case will be remanded, with directions to the trial court to vacate the decree of October 23, 1929, and for any further proceedings not inconsistent with the conclusions which have been stated.