## VIVIANO v. UNITED STATES.
### No. 8261.

United States District Court
E. D. Michigan, S. D.
June 9, 1952.

Maiullo & Maiullo, Detroit, Mich., for plaintiff.

Edward T. Kane, Detroit, Mich., Henry M. Gottlieb Detroit, Mich., Frederick G. Rita (Ass't Atty. Gen.) for defendant.

PICARD, District Judge.

Suit to remove a cloud on the title and to enjoin the United States from instituting proceedings for sale of said property.

### Statement of Facts

Prior to 1944, Gaetano Viviano was practically the sole owner and operator of G. Viviano, Inc., engaged in the importing and selling of wines and food stuffs. The 1943 tax return of said company was signed by Gaetano Viviano "doing business as G. Viviano, Inc." and his wife, Bernice, plaintiff herein, who added her name as party to a "joint return." The amount of tax listed therein was paid, including a tax on $600 that plaintiff supposedly received as an employee. However, the $600 was evidenced by checks which were endorsed by plaintiff's husband and the money was never received by plaintiff.

Subsequently the government ruled that "G. Viviano, Inc." had been a corporation for the first 11 months of 1943 and further proved that Gaetano had fraudulently failed to report many corporate sales over a period of years, including 1943. Defendant then computed the corporation's income taxes at $486,200.95 and instead of plaintiff's and her husband's tax being $104,127.02 as reported and paid, the additional sum of $80,825.70 deficiency was assessed. Later defendant filed a lien on the homestead held by plaintiff and her husband as ten-ants by the entirety for this amount and the husband was indicted for income tax evasion, pleaded guilty and went to jail.

We are concerned with the lien which defendant placed on this property for the removal of which plaintiff primarily brought this action on her claim that her signature on the 1943 joint return was procured by fraudulent means and that liability for any deficiency assessments cannot be predicated thereon. To this defendant answers that whether or not fraud was perpetrated on plaintiff is immaterial and has consistently asked dismissal of plaintiff's action on the ground that this court is without jurisdiction to decide the matter.

However, to completely understand the issues it is necessary to review the pleadings and other claims of plaintiff including a brief history of what has transpired.

1. On the 20th day of June, 1949, plaintiff filed her bill of complaint entitled "Petition To Quiet Title" charging the aforesaid fraud and sought to enjoin defendant's collection of the federal taxes.

2. On December 5th, 1949, plaintiff by permission of this court filed an amended bill of complaint, again asking that this court restrain the collection of the tax lien above referred to, and basing her claim for relief on Section 901, Title 28 of the Code —(as amended by 28 U.S.C.A. § 2410.)

3. On January 17th, 1950, plaintiff filed another amended bill of complaint which was merely an elaboration of the original allegations without the addition of any new and relevant matter.

4. Between January 17th, 1950, and November 27th, 1951, this court, at the request of plaintiff, held all action by defendant in abeyance while plaintiff paid defendant $100 and sought a review of the tax as levied as well as annulment of said tax lien. The Commissioner of Internal Revenue refused to do either.

It is well to note that up to this point plaintiff had never contended that the tax was illegally assessed as to her husband.

5. In the latest amended complaint filed Nov. 27th, 1951, plaintiff alleged that her husband owed no taxes although such an allegation was beyond the scope of the

amendment allowed and contradicted the admissions made by plaintiff in previous pleadings that while the husband owed taxes the plaintiff was not liable for them.

Defendant took the position that plaintiff's husband pleaded guilty to evasion of taxes for 1943 and that the judgment is conclusive upon that point. It admits that the tax lien is a cloud on the title.

### Conclusions of Law

This court, sympathetic with plaintiff's position, has at times, in the interest of justice and equity, advanced suggestions and sought authorities that would entitle plaintiff to recover. However, these authorities were never forthcoming, evidently because they do not exist, and today we must hold the following:

■ **1.** That where there is a cloud on the title to property because of someone's fraud, there appears to be two actions which the petitioner may take. Under the decisions relating to Section 3653, Title 26 U.S.C.A., the Internal Revenue Code, the court could restrain the Collector from collecting any tax based upon such a false or fraudulent return, Midwest Haulers, Inc., v. Brady, 6 Cir., 128 F.2d 496; Louisville Provision Co. v. Glenn, D.C., 18 F.Supp. 423, but there seems to be some question as to the necessity of complying with Section 3679 (a)(1) of Title 26 of the Code, which reads as follows:

"(a) Obtaining leave to file

"(1) Request for institution of proceedings by United States. Any person having a lien upon or any interest in the real estate referred to in section 3678, notice of which has been duly filed of record in the jurisdiction in which the real estate is located, prior to the filing of notice of the lien of the United States as provided in section 3672, or any person purchasing the real estate at a sale to satisfy such prior lien or interest, may make written request to the Commissioner to authorize the filing of a civil action as provided in section 3678."

Section 3678 covers a situation such as this.

It will be noticed that a petition must be made to the Internal Revenue Commissioner which has never been done in this case. An action to remove such a cloud cannot be based on Section 2410, Title 28 of the Code. As said by Judge Lederle in Haldeman v. U. S., D.C., 93 F.Supp. 889, 890—

"The statute presupposes that the court in which such suit is brought has jurisdiction thereof on grounds independent of such statute."

■ **2.** Notwithstanding the original complaint in this case is labeled "Petition To Quiet Title" based on Title 28 U.S.C.A. § 2410, the facts as established and the briefs presented in series prompt this court to the conclusion that this petition was not commenced to determine title but was in effect nothing more than a suit to enjoin the collection of taxes in deviation of procedure set forth by Congress with respect to refund of internal revenue taxes.

That an action is captioned so as to bring it within the court's jurisdiction is not sufficient.

■ **3.** Nevertheless, if plaintiff had taken the proper proceedings here she would still be confronted with the holdings of our courts. The tenor of her complaint has constantly been that no tax should have been levied against her under any circumstances because she had been defrauded. There is not now and never has been any alleged "overcharge of tax" and no charge that the tax had not been computed correctly or that certain deductions have not been allowed. True, plaintiff at the last hearing attempted to introduce some evidence to that effect but even if all her claimed deductions were allowed there would still be sufficient tax to support the lien as levied.

Her present claim is and always has been that there should have been no tax against her whatsoever and this court stated it would proceed to decide her case on the theory and assumption that she had been defrauded by her husband. Incidentally and notwithstanding that we do not consider the question important, there might have been sufficient evidence to support a doubt

that plaintiff actually was defrauded since she was active in the affairs of her husband's business and even today is carrying on the same to some extent. The relationship of husband and wife always makes this question of fraud rather difficult in that the husband so many times handles the financial aspects of everyday living, at home and in business, with the wife following his suggestions and complying with his requests as a matter of policy and practice. Such procedure promotes harmony in the home.

But herein, plaintiff and her husband sought to take advantage of an available tax provision, to their benefit at the time. She signed his 1943 individual return as a joint return for the two of them. She cannot now vitiate the responsibility and civil liability necessarily entailed by reason of that signature. Furthermore—and we deem this to be important—she was not tricked into signing a return. She may have been misinformed as to its contents but she admitted that she signed the return voluntarily. It is in this sense that we accepted plaintiff's construction that she has been defrauded by her husband. The resulting misfortune and dire consequences have been carefully considered but the facts and these circumstances cannot be held to relieve her. The same question was before our own circuit on practically an identical set of facts wherein the court said:

"The existence of liability both for the penalties and the deficiencies is determined by the wording of § 51(b), which makes no distinction as to whether the transactions out of which the liability arises are fraudulent or nonfraudulent. * * * The fact that petitioner was not the moving spirit in the fraud is immaterial on the question of her liability." Howell v. Commissioner of Internal Revenue, 6 Cir., 1949, 175 F.2d 240, 241.

Without determining the legislative intent in light of prevailing equities, we may note by way of explanation that

"* * * there was judicial conflict as to whether the liability of the spouses for the tax on such returns was both joint and several. Beginning with the Revenue Act of 1938 and continuing in the Internal Revenue Code, husbands and wives living together were still permitted to make separate returns of their respective incomes or to make a single joint return, with the tax, in the latter case, being computed on the aggregate income. But unlike in prior acts, a joint return was permitted even though one of the spouses had no gross income, and the liability of the spouses for the tax on a joint return was made joint and several. * * * The legislative history of the provision imposing joint and several liability indicates that the single purpose of the provision was to set at rest the doubt which had theretofore arisen as to the existence of such liability in the case of joint returns." Alex H. Davison, 1949, 13 T. C. 554.

No additional grounds for relief having been advanced, the court must rule in favor of defendant. An order to that effect may be presented for our signature.