**COLORADO MILLING & ELEVATOR CO.**

v.

**GLENN, Collector of Internal Revenue et al.**

**Civ. A. No. 2490.**

United States District Court
W. D. Kentucky, at Louisville.

Jan. 25, 1954.

944

William H. Abell, Ogden, Galphin & Abell, Louisville, Ky., for plaintiff.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Frederic G. Rita, Sp. Assts. to the Atty. Gen., Charles F. Wood, Asst. U. S. Atty., Louisville, Ky., for defendants the United States and Selden R. Glenn, Collector of Internal Revenue.

SHELBOURNE, Chief Judge.

This action was filed October 21, 1952, by The Colorado Milling & Elevator Company against S. R. Glenn, Collector of Internal Revenue, The United States, Koehler-Spalding Company; Koehler Brokerage Company, Lincoln Bank & Trust Company and numerous other firms and persons and concerns, all of whom were indebted to Koehler-Spalding Company on invoices of beans or peas which they had purchased but had not paid for at the time a warrant of distraint issued by the Collector was served upon them.

Jurisdiction of the action was claimed under Section 1340, Title 28 U.S.Code, the United States being made a party under the provisions of Section 2463 of Title 28 U.S.Code, the complaint alleging that consent to such suit against the United States is granted by Section 2410, Title 28.

In substance, the complaint alleged that the plaintiff hereinafter referred to as "Colorado" and defendant Koehler-Spalding Company, hereinafter referred to as "Koehler-Spalding" entered into an agreement about September 15, 1951, under which Colorado agreed to and did consign bulk and packaged beans and peas to Koehler-Spalding at Louisville and that the latter agreed to sell the beans and peas on behalf of Koehler-Spalding at prices fixed by Colorado; that Koehler-Spalding was to receive compensation sufficient to care for storage, handling, selling and invoicing, and out of the proceeds of sales of the merchandise was to pay Colorado the base price fixed by Colorado in advance of the sales by Koehler-Spalding, which represented a f. o. b. Louisville price to be received by Colorado; that thereafter, in August 1952, the Collector of Internal Revenue served a jeopardy assessment against Koehler-Spalding for an amount in excess of $190,000, as delinquent income taxes against Koehler-Spalding, under which jeopardy assessment the Collector on August 26, 1952, seized and distrained the beans and peas in storage at Koehler-Spalding's plant in Louisville and various accounts and bank deposits belonging to Colorado and applied the money and merchandise so seized to the payment of the delinquent income taxes due by Koehler-Spalding.

Colorado claimed that the Collector had no right to levy upon the merchandise or money and accounts and sought by the complaint a judgment requiring the Collector to pay forthwith to Colorado all sums which he had collected from the debtors of Koehler-Spalding from the Lincoln Bank & Trust Company and sought an additional recovery in damages of $2,256.68.

The answer of the Collector and of the United States denied the material allegations of the complaint and set up two affirmative defenses: 1. That the Court was without jurisdiction of the United States, because Colorado's demand exceeded $10,000, and that under Section 1340 of Title 28 U.S.Code, Colorado's forum, if any, was in the Court of Claims. 2. That the complaint failed to state a cause of action upon which relief could be granted.

The Collector's first affirmative defense was that all of the monies received by him under the jeopardy assessment

or distraint warrant had been covered into the Treasury of the United States prior to the institution of this action, in accordance with Section 3971(a) of the Internal Revenue Code.

The case was tried to the Court without a jury September 3, 1953.

Counsel for plaintiff and defendants United States and the Collector have filed briefs and suggested findings of fact and conclusions of law. The Court makes the following findings of fact and conclusions of law, separately stated:

### Findings of Fact

1. Plaintiff, The Colorado Milling & Elevator Company, is a corporation created under the laws of the State of Colorado. Defendant Koehler-Spalding Company is a corporation created under the laws of the State of Kentucky and doing business at Louisville, Kentucky.

2. About September 15, 1951, Colorado and Koehler-Spalding entered into an agreement, by which Colorado consigned dried beans and peas to Koehler-Spalding, which the latter agreed to sell from its Louisville plant where it maintained warehouses and elevators.

From the time the agreement became effective until sometime in January 1952, Koehler-Spalding reported to Colorado sales and invoices for such sales made in the name of Colorado and the customer remitted directly to Colorado.

In January 1952, the arrangement was changed so that Koehler-Spalding invoiced the sales to the purchasers in the name of Koehler-Spalding, the price of the sales being—first a base price furnished by Colorado to Koehler-Spalding and referred to in the evidence in this case as the base price f. o. b. Louisville which Colorado was to receive from each sale. Second, an additional amount representing the amount due Koehler-Spalding to compensate it for storing, handling and selling the merchandise. At the end of each day, Koehler-Spalding would report to Colorado the total sales made that day and Colorado in turn billed Koehler-Spalding for that day's aggregate sales. The proceeds of all sales, when received by Koehler-Spalding from the customers, were deposited by Koehler-Spalding in its general checking account in the Lincoln Bank & Trust Company at Louisville.

There is no evidence in this case as to any unconditional guaranty by Koehler-Spalding of the solvency of any customers to whom it sold merchandise consigned to it by Colorado and in making payment to Colorado, Koehler-Spalding remitted by check drawn on its general banking account in the Lincoln Bank & Trust Company at Louisville.

No special account was maintained by Koehler-Spalding for the deposit of the proceeds of sales of merchandise and no system of accounting has been filed in the evidence by which the Court could ascertain in the amount of any particular sale the portion thereof due Koehler-Spalding and the portion thereof due Colorado.

The accounts of Koehler-Spalding with its customers, to whom it sold the beans and peas consigned to it by Colorado, were kept in the same manner as other accounts of Koehler-Spalding with other wholesalers and manufacturers from whom it obtained merchandise which it sold.

3. On or about August 1, 1952, the Commissioner of Internal Revenue assessed against Koehler-Spalding deficiencies of income taxes for the years 1942 to 1946 inclusive, aggregating $192,418.56. The assessment lists covering these assessments were received by the defendant Glenn as Collector of Internal Revenue at Louisville, Kentucky, on August 4, 1952.

On or about August 26, thereafter, notice of the assessments and demand for payment were made upon Koehler-Spalding and when payment was not made, warrants of distraint issued and on August 26, 1952, notices of the levy under the warrants of distraint were served upon the Lincoln Bank & Trust Company, Louisville, and upon the following persons and business concerns to whom Koehler-Spalding had sold beans

and peas consigned to it by Colorado and who were indebted to Koehler-Spalding, as appeared on its books, in the following amounts:

| Name | Amount |
| --- | --- |
| B. G. Wholesale Co | 2,375.77 |
| Bottom Bernard Co | 956.63 |
| Oscar Brown & Sons | 325.82 |
| L. S. Cherry Co | 10.44 |
| Danville Wholesale Grocery Co | 165.85 |
| Durham Grocery Co | 301.45 |
| Economy Wholesale Co | 579.00 |
| Frankfort Grocery Co | 426.68 |
| The Great A. & P. Teas Co | 723.75 |
| D. G. Hayes Grocery Co | 1,806.61 |
| Jellico Grocery Co | 55.80 |
| Dyche Jones Food Stores, Inc. | 94.00 |
| Kentucky Food Stores | 1,280.92 |
| Louisville Grocery Co | 472.40 |
| Logan Murray Grocery Co | 1,174.50 |
| Otter & Co., Inc. | 42.00 |
| Richardson Grocery Co | 68.75 |
| Raymond Sales Co | 61.09 |
| H. Runyan & Sons, Inc. | 1,323.59 |
| Vaughn Grocery Co | 102.29 |
| W. T. Young Foods, Inc. | 1,114.00 |
| Bass Salvage Co | 125.80 |
| Raymond-Johns Distributing Co | 10.44 |

Upon the demand of the Collector, the above persons and firms paid the amounts of their respective indebtedness and the Lincoln Bank & Trust Company paid to the Collector the sum of $28,000.

4. Promptly, upon receipt of the payments of said various amounts and in accordance with the requirements of Section 3971(a) of the Internal Revenue Code, Glenn as Collector, covered said payments into the Treasury of the United States.

5. Thereafter, and on September 15, 1952, Colorado demanded of the Collector $5,538.58 out of the $28,000 bank account, which the Lincoln Bank & Trust Company had paid to the Collector as the amount of the checking account of Koehler-Spalding and also demanded of the Collector $13,597.58 of the amounts received by the Collector from the debtors of Koehler-Spalding, claiming that the $5,538.58 of Koehler-Spalding's bank account and $13,597.58 of its accounts represented the proceeds of sales of merchandise which Koehler-Spalding had sold as the agent or factor of Colorado.

6. Colorado has not established in this action, by evidence satisfactory to the Court, that $5,538.58 of the $28,000 bank account of Koehler-Spalding in the Lincoln Bank & Trust Company, represented the base price f. o. b. Louisville, which Koehler-Spalding had agreed to pay Colorado for merchandise. Their claim in this respect is based upon the "first in, first out" theory and was thus stated by Colorado's chief accountant A. K. McClelland:

"The opening balance of the Koehler-Spalding account on August 1st was $10,716.97. During the month of August, or or before August 26th, there were deposits to the total amount of $71,656.74, which with the opening balance made a total of $82,373.71, total funds available in August. Against that, the Lincoln Bank & Trust Company honored checks in the total amount of $53,-830.31 remaining in the bank.

"Taking the total amount of cash available, beginning with the opening balance and listing deposits in sequence on the dates they were made and taking the assumption that the last deposits made were those still remaining in the bank, using the first-in, first-out basis, it required the opening balance and all of the deposits through the 15th and a portion of the deposit made on the 18th to cover the $53,543.40 in checks that were honored by the bank—to cover the exact amount to be required, $4,359.36 of the $7,483.04, that would have left of this deposit of the 18th, $3,124.58 that was not required to cover checks honored by the bank during the month of August.

"To develop the first-in, first-out basis, as to the funds of the Colorado Milling and Elevator Company which were included in these deposits, I divided the $576.01, Colora-

do funds for August 18th in exactly the same proportion as the total deposit had to be divided in order to cover the total checks which were honored by the bank. On that basis, $335.52 of the $576.01 would have been used in honoring the checks which were paid by the bank and there would have been left $240.49 of that deposit, which on the first-in, first-out basis would still have remained in the bank on August 26th and to the firm's account and the deposits made from there after that time through August 26th on a first-in, first-out basis would still have remained in the bank on August 26th. The total funds in the bank were $28,830.31 and the amount of the Colorado Milling Company's funds developed on the basis I have outlined were $5,538.58."

7. The amount of the twenty-three accounts, aggregating $13,597.58, which Colorado seeks to recover, represents not only the amount which Koehler-Spalding owed to Colorado, as the base price f. o. b. Louisville for the beans and peas, but includes the additional amount which Koehler-Spalding charged the purchasers for handling, storing and commission.

### Conclusions of Law

■ I. The Court has jurisdiction of the parties and the subject matter under Section 1340, Title 28 U.S.Code.

It is claimed by the United States that the Court is without jurisdiction because plaintiff's claim is in excess of $10,000, and that this Court's jurisdiction under the Tucker Act, Title 28 U.S. Code, Section 1346(a) (2) is limited to claims not exceeding $10,000.

In Stuart v. Chinese Chamber of Commerce of Phoenix, 9 Cir., 168 F.2d 709, 712, the Court said—

"From early date the Supreme Court has held that district courts having jurisdiction of property taken or detained by revenue officers under authority of any revenue law of the United States, are given power to decide claims of title and to award to the rightful owner possession of the property seized. * * *

"We have been unable to discover, and have been apprised of no procedure prescribed either by the regulations or the code whereby a third party claimant, not a taxpayer, may reclaim property unlawfully seized or restrained, and since this is not an action to recover a tax alleged to have been erroneously assessed or collected, the Collector could not subject the appellants to the necessity of filing a full claim for refund under section 3772 of the Internal Revenue Code. In that event, a demand putting the Collector on notice of the appellees' position and apprising him of the amounts and the reason for their respective claims should be sufficient."

See also Glenn v. American Surety Company, 6 Cir., 160 F.2d 977, and In re Fassett, 142 U.S. 479, 12 S.Ct. 295, 35 L.Ed. 1087.

■ II. The beans and peas levied on by the Collector, the bank account in the name of Koehler-Spalding and the accounts sought to be recovered by the plaintiff were the property of Koehler-Spalding.

There can be no doubt that the original arrangement between Colorado and Koehler-Spalding contemplated that the latter would act merely as the agent or factor of Colorado in the sale of the beans and peas, and had the conduct of the parties been in accordance with the plan, no confusion would have resulted, but as said by the Court in In re Wells, D.C., 140 F. 752:

"There is no particular magic in the term 'consigned' or 'consigned account.' In a sense all goods shipped to another are consigned to him. The question is what was the inherent character of the transaction, which depends upon the purpose of it. Were the goods put in the hands of the one party by the other, to be sold for him and on his account, creating the relation of

principal and factor; or were they turned over to such party, to be treated and disposed of as his own, being responsible to the other simply for the price? In the one case we have a trust or bailment, the goods throughout being those of the consignor or principal, as well as the moneys received for them. In the other there is a sale; the super-added condition, sometimes appearing, that the title shall not pass until the goods are paid for, amounting to nothing as a restriction upon it."

In the case of In re Wells, supra, the Court quotes with approval from 24 American & English Encycl.Law (2d Ed.) 1026, the following:

"If, however, the consignee or factor is to sell upon terms fixed by himself, and is bound to pay to the consignor a fixed price, the contract is one of sale."

In Taylor v. Fram, 2 Cir., 252 F. 465, 469 it is held that an agreement of which creditors do not have constructive notice, which reserves title to a consignor who nevertheless and contrary to the terms of the agreement permits the consignee to make sales and deposit the proceeds of sales in his general bank account and use them for his own purposes, does not entitle the consignor to claim proceeds of the sales as principal against his consignee as agent.

■ III. The arrangement as contemplated by the parties in September 1951 and January 1952, as reflected by the letters from Koehler-Spalding to Colorado, indicates an intention to establish the relationship of principal and agent. The expressions, however, in contracts are not conclusive of relationships that arise between parties as a result of the method of transacting business actually conducted between them.

Courts will ignore language of a contract which is at variance with the conduct of the parties pretending to act under the contract. City of Owensboro v. Dark Tobacco Growers Association, 222 Ky. 164, 300 S.W. 350.

It is concluded that the action of the Collector in subjecting the property assessed under the distraint warrant to the payment of the tax liability of Koehler-Spalding was proper, for the reason that the property assessed was property of the taxpayer and the claim of Colorado to be the owner of the property or entitled to the bank account, or any part thereof, or to the accounts assessed by the Collector, should be dismissed.

A judgment in accordance with these findings and conclusions here made will be submitted by counsel for the defendants, on notice to plaintiff's counsel.