James R. COSON, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 20872–TC.

United States District Court
S. D. California,
Central Division.

Dec. 30, 1958.

672

Wadsworth, Fraser & McClung, Los Angeles, Cal., for plaintiff.

Laughlin E. Waters, U. S. Atty., Edward R. McHale, Asst. U. S. Atty., Chief, Tax Division, Los Angeles, Cal., for defendant.

CLARKE, District Judge.

This action is one to quiet title to specific parcels of real property owned by plaintiff, against which the United States claims a lien for unpaid withholding, employment, and cabaret taxes. Viewed in the light of the pleadings and the evidence adduced at trial, plaintiff's main contention is that the United States has no lien because these taxes never have been assessed against him.

Between March and August of 1955, plaintiff invested $31,000 in a newly organized Las Vegas, Nevada, hotel and gambling establishment known as the "Moulin Rouge," and obtained a 1.70 per cent interest therein. He reasonably and in good faith thought he was investing as a limited partner in a limited partnership. The Moulin Rouge was not, however, a limited partnership. Upon first ascertaining this, plaintiff promptly mailed notices of renunciation.

On November 15, 1955, there was filed with the County Recorder of Los Angeles County, California, a Notice of Federal Tax Lien for unpaid withholding, employment, and cabaret taxes in the sum of over $133,000 against the "Moulin Rouge Partnership," and many individuals, including the plaintiff, James R. Coson.

Notice and demand for the payment of these taxes was first individually given James R. Coson subsequent to the commencement of this action.

Plaintiff asserts this court has jurisdiction over the subject matter of this action under section 1340 of Title 28 U.S.C.[1]

In Merchants Loan Co. v. United States, D.C.Ariz.1957, 169 F.Supp. 227, an action to quiet title to an automobile, the disputed point was whether a federal tax lien should be afforded priority over a chattel mortgage. The court, merely citing § 2410(a) of Title 28 U.S.C.[2] concluded it had jurisdiction. The court, being within the Ninth Judicial Circuit, presumably followed the rule laid down by the Court of Appeals for the Ninth Circuit in Seattle Ass'n of Credit Men v. United States, 1957, 240 F.2d 906 and Wells v. Long, 1947, 162 F.2d 842 to the

1. "§ 1340. *Internal revenue; customs duties* The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, * * *".

2. "§ 2410. *Actions effecting property on which United States has lien.* (a) Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the

United States may be named a party in any civil action or suit in any district court, including the District Court for the Territory of Alaska, or in any State court having jurisdiction of the subject matter, *to quiet title to* or for the foreclosure of a mortgage or other lien upon *real or personal property* on which the United States has or claims a mortgage or other lien." (Emphasis added.)

effect that § 2410 is only a waiver of sovereign immunity, and does not confer jurisdiction upon the federal courts. Since no seizure of property was involved in this case, the court could not have resorted to section 2463 of Title 28 U.S.C.[3] The only basis for the court's having assumed jurisdiction would appear to have been § 1340.

A like view might be taken of Macatee, Inc., v. United States, 5 Cir., 1954, 214 F.2d 717, but for some uncertainty as to whether the Fifth Circuit likewise views § 2410 as amounting solely to a waiver of sovereign immunity. This is true notwithstanding Maule Industries, Inc., v. Tomlinson, 5 Cir., 1957, 244 F.2d 897, wherein § 1340 was held nonapplicable, for that case turned upon the question of ownership of property which had been levied upon by the District Director for unpaid taxes.

Both City of New York v. Evigo Corp., D.C.S.D.N.Y.1954, 121 F.Supp. 748 and Phillips v. Jonas, D.C.E.D.Wis.1952, 122 F.Supp. 773, involved the question of whether a federal tax lien should be afforded priority, and jurisdiction was based on § 1340. It should be noted, however, that in City of New York, the United States had removed the action to the federal court pursuant to section 1444 of Title 28 U.S.C.[4] The case of Hood v. United States, 9 Cir., 1958, 256 F.2d 522, which held no original federal jurisdic-

tion was necessary for a removal by the Government under § 1444, casts doubt upon the necessity for the court's having discussed the applicability of § 1340. In addition, both City of New York and Phillips involved seizures; thus, § 2463 was available as an alternative ground for jurisdiction.

Gerth v. United States, D.C.S.D.Cal. 1955, 132 F.Supp. 894 and Colorado Milling & Elevator Co. v. Glenn, D.C.W.D. Ky.1954, 118 F.Supp. 943 both cite § 1340 as a basis for jurisdiction, but are of questionable authority, since both turned upon a question of title to the property involved. Also, the court in Gerth cited § 1340 only after having first concluded it had jurisdiction by virtue of § 2463. Likewise, in the Colorado Milling Co. case, a levy having been involved, the court could have relied upon § 2463.[5]

In the instant case, plaintiff asserts the invalidity of the Government's claim of lien against his property under the Internal Revenue Code of 1954. The basic question raised is whether or not such a lien exists. This court concludes that this is a controversy arising under an internal revenue law[6] and that it has jurisdiction of the action by virtue of § 1340.

This action is one to quiet title. It is not one for declaratory judgment, forbidden by section 2201 of Title 28 U.S.C.[7] It does not seek to restrain the assess-

---

3. "§ 2463. *Property taken under revenue law not repleviable.* All property taken or detained under any revenue law of the United States shall not be repleviable, but shall be deemed to be in the custody of the law and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof."

4. "§ 1444. *Foreclosure action against United States.* Any action brought under section 2410 of this title against the United States in any State court may be removed by the United States to the district court of the United States for the district and division in which the action is pending."

5. cf. Sanders v. Andrews, D.C.W.D.Okl. 1954, 121 F.Supp. 584, reversed sub nom Sanders v. Commissioner, 10 Cir., 1955,

225 F.2d 629 (presence of a notice of distraint upon the property would have made § 2463 applicable, although the court cites only § 2410 as a basis for jurisdiction). But cf. Tamco, Inc., v. United States, D.C.Idaho 1958, 162 F.Supp. 534 (nature of the controversy not stated) ; Naus v. Brodrick, D.C.Kan.1951, 103 F.Supp. 233 (an action to recover taxes which had been paid, rather than one to quiet title).

6. cf. United States v. Security Trust & Sav. Bk., 1950, 340 U.S. 47, 49, 71 S.Ct. 111, 95 L.Ed. 53.

7. "§ 2201. *Creation of remedy.* In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States [and the District Court for the Territory of Alaska], upon the filing of an appropri-

ment or collection of any tax; rather, its purpose is to quiet plaintiff's title to certain real property against a claimed lien for taxes by the United States. Thus, it is not within the prohibition of section 7421 of Title 26 U.S.C.[8]

Plaintiff relies upon section 2410 of Title 28 U.S.C. as authorizing this action against the United States. As noted above, § 2410 is a waiver of sovereign immunity, and is not limited to actions seeking to foreclose and obtain a judicial sale, but extends to actions to quiet title. United States v. Morrison, 5 Cir., 1957, 247 F.2d 285; Seattle Ass'n of Credit Men v. United States, supra, 240 F.2d at page 908.

The critical question is whether § 2410(a) authorizes an action to quiet title against a lien asserted by the Government for taxes allegedly owed by the plaintiff.

In Commercial Credit Corp. v. Schwartz, D.C.E.D.Ark.1954, 126 F.Supp. 728, a mortgagee brought a foreclosure action in a state court. He named as a defendant the United States, which claimed a lien against the property for unpaid taxes of the mortgagor. The Government removed the case to the federal district court pursuant to § 1444. The mortgagees, defendants in the action, sought leave to file an amended answer, whereby they might "attack the validity of the assessment upon which the Government's lien is based on the ground that the Commissioner of Internal Revenue in computing their in-

come tax for that year erroneously treated as income certain moneys which were not in fact such." at page 729. In denying the motion, the court observed "it should be kept in mind that the movants are not seeking merely to *remove a lien* from the fund which now stands in the place of their property; the Government's *lien* for unpaid taxes is one thing, and the *assessment* upon which such lien is based is quite a different thing. * * *" (Emphasis added.) at page 729.

In Sanders v. Andrews, D.C.W.D.Okl. 1954, 121 F.Supp. 584, rev'd sub nom Sanders v. Commissioner, 10 Cir., 1955, 225 F.2d 629, another case involving a taxpayer's action to quiet title against a federal tax lien, the court observed: "The defendants contend that it is an attempt on the part of the plaintiffs to have this court determine their tax liability. This court would have no jurisdiction in a purely income tax controversy, but this is not an income tax case. The mere fact that the liens claimed are for a tax lien does not deprive this court of jurisdiction. Under the statutes this court has jurisdiction in this character of case to quiet title against liens asserted if under the record it is disclosed to the satisfaction of the court that the liens are invalid or the result of arbitrary and capricious conduct." 121 F. Supp. at page 593.[9]

§ 2410(a), as first enacted in 1931[10] was limited to foreclosure actions. In 1942[11] it was amended to include actions

---

ate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

**8.** "§ 7421. *Prohibition of suits to restrain assessment or collection* (a) Tax. Except as provided in sections 6212(a) and (c), and 6213(a), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court. * * *".

**9.** But cf. Hixson v. Hixson, D.C.S.D.Cal.

1958, 170 F.Supp. 590 (controversy involved the question of tax liability); Gordon v. Bank of America Nat'l Trust and Sav. Ass'n, D.C.N.D.Cal.1957, 150 F. Supp. 772 (no claim of lien had yet been asserted); Viviano v. United States; D.C. E.D.Mich.1952, 105 F.Supp. 312 (subject matter of the controversy not stated); Sidbury v. Gill, D.C.E.D.N.C. 1952, 102 F.Supp. 483 (removal of tax liens sought on grounds of fraudulent assessment.)

**10.** Act of Mar. 4, 1931, c. 515, sec. 1, 46 Stat. 1528.

**11.** Act of Dec. 2, 1942, c. 656, sec. 1, 56 Stat. 1026.

to quiet title. The Reports by the Committees on the Judiciary of both Houses of Congress are identical.[12] One stated purpose of the bill was "to provide a method to clear real-estate titles of questionable or valueless Government liens." [13] The Committee Reports then printed a letter from the Attorney General of the United States pertaining to certain suggestions concerning a previous bill, which had been incorporated in the bill then before the committees. That letter stated:

"It should be observed * * * that under existing law there is no provision whereby the owner of real estate may clear his title to such real estate of the cloud of a Government mortgage or lien. Welch v. Hamilton, [D.C.] (S.D.Cal.), 33 F.2d 224, and United States v. Turner (8 Cir.), 47 F.2d 86.

"In many instances persons acting in good faith have purchased real estate without knowledge of the Government lien or in the belief that the lien had been extinguished. In other instances, mortgagees have foreclosed on property and have failed to join the United States. It appears that justice and fair dealing would require that a method be provided to clear real estate titles of questionable or valueless Government liens. Accordingly, I suggest that the bill be amended by inserting the phrase 'to quiet title' between the words 'matter' and 'for the foreclosure of' * * *."

■ Clearly, the bringing of a quiet title action solely against the United States was contemplated. Although the examples discussed by the Attorney General in his letter both dealt with situations where one other than a taxpayer might seek to quiet title to his property against liens asserted by the Government, the statute contains no language precluding such an action by a taxpayer.

■ In this case, plaintiff does not seek to contest the *correctness* of an assessment; instead, he contends there just never was any assessment of the taxes in question against him. Since the taxes were not income, estate, or gift taxes, he did not have the alternative of filing a petition with the Tax Court.[14] This court concludes this action may be maintained pursuant to § 2410(a).

Section 6203 of Title 26 U.S.C.[15] and section 301.6203-1 of Title 26 C.F.R. (1955)[16] set forth, as one of the requirements for an assessment, that the taxpayer be identified.

The Government offered and introduced in evidence five Assessment Certificates (Forms 23C) and eight unit ledger cards as "showing the actual assessment of the taxes against the Moulin Rouge" in 1955.[17] Each Assessment Certificate is merely a summary record of current and deficiency assessments, for many types of federal taxes, against an unknown number of unidentified taxpayers for a particular period of time by the District Director's Office for Nevada. Although these Assessment Certificates contain symbols indicating the accounting abstracts or journals from which they were prepared, these abstracts or journals were not offered in evidence.

---

12. S.Rep. No. 1646, 77th Cong., 2d Sess. (1942); H.R.Rep. No. 1191, 77th Cong., 1st Sess. (1941).

13. H.R.Rep. No. 1191, supra, at 1.

14. § 6213(a) Int.Rev.Code of 1954, 26 U.S.C.A. § 6213(a).

15. "§ 6203. *Method of assessment* The *assessment* shall be *made* by *recording* the *liability* of the taxpayer in the office of the Secretary or his delegate in accordance with rules or *regulations prescribed* by the Secretary or his delegate. * * " * * *" (Emphasis added.)

16. "§ 301.6203-1 *Method of assessment.* The district director shall appoint one or more assessment officers, and the assessment shall be made by an assessment officer signing the *summary record* of assessment. The summary record, through *supporting records*, shall provide *identification of the taxpayer*, * * *" (Emphasis added.)

17. Record, pp. 118-119.

The Government apparently proceeded on the theory that the eight ledger cards showed the same information as would have been disclosed by the pertinent abstracts or journals. Only five of the eight ledger cards appear relevant to this action, and all five are, with small variations in the order of names or abbreviations thereof, in the name of Alexander Bisno, Louis Rubin, and the Moulin Rouge.

In addition, counsel for defendant introduced a Certificate of Assessments and Payments (Form 899), pertaining to Alexander Bisno, Louis Rubin, and the Moulin Rouge. The Certificate of Assessments and Payments, the five Assessment Certificates, and the five ledger cards referred only to Alexander Bisno, Louis Rubin, and the Moulin Rouge. They neither *labeled* Bisno or Rubin as *partners*, nor the Moulin Rouge as a *partnership*. They did not name the plaintiff, James R. Coson.

No case has been discovered which deals with the required identification of an individual in order for there to be an assessment of taxes against him.[18] However, on the facts of this case, it is concluded that the plaintiff herein never was assessed for these taxes.

Section 6322 of Title 26 U.S.C.[19] provides that a lien, of the type asserted by the Government in this case, *arises* at the time of assessment. Although there is an apparent inconsistency between § 6321 [20] and § 6322 [21] and § 6321 contains no requirement of an assessment [22] this court is of the opinion that such a lien does not exist against a particular individual's property pursuant to §§ 6321 and 6322 unless the underlying tax obligation has been assessed against him under § 6203.[23]

Since plaintiff never was assessed and no lien exists without such an assessment, it follows that the Government does not have any lien.

Judgment will be entered for plaintiff, wherein it will be declared that the Government has no lien for the taxes asserted in the Notice of Tax Lien filed with the County Recorder of Los Angeles County against the specific real property involved herein, and it will be ordered that the United States refrain from any further assertion of such a lien based upon the 1955 assessment of Bisno, Rubin, and the Moulin Rouge. Such judgment will not, however, in any way purport to restrain any subsequent assessment of these same taxes or any action by the United States to collect the alleged underlying tax obligation.

18. But cf. Underwood v. United States, D.C.E.D.Tex.1939, 37 F.Supp. 824, affirmed, 5 Cir., 1941, 118 F.2d 760 (whether or not the individual partners were identified by name in the assessment is not stated); Heller v. United States, D.C.N.D.Cal.1954, 55–1 USTC par. 49,-084 (withholding taxes of partnership were lawfully assessed); In the Matter of Crockett, D.C.N.D.Cal.1957, 150 F. Supp. 352 (validity of assessment not involved).

19. "§ 6322. *Period of lien* Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time."

20. "§ 6321. *Lien for taxes* If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

21. See MacKenzie v. United States, 9 Cir., 1940, 109 F.2d 540, 541 (predecessor statutes).

22. Accord, Macatee, Inc. v. United States, supra, 214 F.2d at page 720 (1939 Code).

23. See United States v. Ettelson, 7 Cir., 1947, 159 F.2d 193; Kennebec Box Co. v. O. S. Richards Corp., 2 Cir., 1925, 5 F.2d 951.